**In re Sam HOUSTON, Relator.**

**No. 14–02–01070–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 16, 2002.

Lennon C. Wright, Marc A. Young, Houston, for relator.

Sandra N. Eidson, Houston, for respondent.

Panel consists of Chief Justice BRISTER and Justice HUDSON and Senior Chief Justice MURPHY.*

**OPINION**

SCOTT BRISTER, Chief Justice.

Relator, Sam Houston, filed a petition for writ of habeas corpus and motion for emergency relief in this Court. *See* TEX. GOV'T.CODE ANN. § 22.221(d); *see also* TEX. R.APP. P. 52. He sought to set aside the judgment of contempt signed October 18, 2002 by the Hon. Sharolyn Wood, respondent, ordering him confined to the Harris County jail until he paid a $500 fine and complied with an injunction order of September 9, 2002, in Cause No. 2002–43787 (consolidated with No. 2002–43861), styled *Sam Houston v. Millennium Insurance Agency, Inc., and Mike Stroman v. Rebecca R. Johnson and Steven Burdette.* We hold the judgment of contempt is void and grant habeas corpus relief.

---

* Senior Chief Justice Paul C. Murphy sitting by assignment.

The underlying case involves a dispute over insurance files. Relator was formerly employed by Millennium Insurance Agency, Inc. When he learned he would be fired, he removed certain files from the office to another location. Each side in the dispute obtained temporary restraining orders against the other, and on September 5, 2002, the trial court, with Judge Martha Hill Jamison presiding, conducted a temporary injunction hearing. On September 9, 2002, Judge Jamison signed a temporary injunction order directing relator and a business associate[1] to return the disputed files, in relevant part as follows:

> Sam Houston and Steve Burdette will copy all the files in their possession as of September 5, 2002, including without limitation all files previously in the possession of Millennium Insurance Agency, Inc., provide the original policy files and their complete contents to Millennium and retain the copies.

The September 9 order required the parties to "complete" this directive within twenty-one days.

On October 4, 2002, Millennium filed a motion to show cause why relator should not be held in contempt for violating the September 9 injunction order. Millennium asserted that relator had only returned incomplete portions of the files. In the show cause notice, Millennium requested the court:

> find SAM HOUSTON in contempt of court, set a hearing where SAM HOUSTON show cause as to why he should not be held in contempt of this Court's previous Order or enforce the September 9, 2002 Order currently in place and require SAM HOUSTON to return all original records; that SAM HOUSTON

---

1. Although Millennium also sought to hold Steve Burdette in contempt, he was found not guilty and is not a party to this proceeding.

be ordered to pay attorney fees [*sic*] MILLENNIUM INSURANCE AGENCY, MICHAEL STROMAN and LARRY J. STROMAN for the filing and enforcement of the Court's Order, and any and all further relief movants may justly be entitled.

The trial court, with respondent Judge Sharolyn Wood presiding, conducted a hearing on the motion for contempt on October 8, October 16, and October 18, 2002. On October 8, the court gave relator until 4:00 p.m. on October 14 to turn over "all of the files in their possession as of September 5, 2002," and continued the hearing. When the hearing resumed, relator maintained he had complied with the injunction order and returned all files, comprising at least twenty-three boxes of documents. At the hearing, there was testimony that approximately four or five documents were not included in the files returned to Millennium. At the conclusion of the hearing, the trial court stated her findings as follows:

> The Court finds that Sam Houston is in contempt of the Court's September 9th, 2002 order by blatantly refusing to return the files as ordered by Judge Jamison. Punishment for that is assessed at a $500 fine and three days in jail. That's the criminal contempt.

> In addition, the Court finds defendant Sam Houston is found guilty of civil contempt and shall be held by the sheriff until the documents as itemized that will attached [*sic*] to the order of confinement—order of contempt have been produced. There is a three-day sentence. That will get us to Monday morning. All counsel are instructed to return at 8:30 Monday morning. The prisoner will be here. Let's hope the documents are here . . . .

The trial court then signed a judgment of contempt on October 18, 2002, which recited in relevant part as follows:

The Court finds that SAMUEL T. HOUSTON is guilty of violation of the temporary Injunction in the following particulars:

    a.  Houston refused to return all original policy files and their complete contents to Millennium.

    b.  To date, during this hearing Houston has returned only incomplete portions and pieces of the original files taken from Millennium and correspondence to and from the customers, customer information and insurance policy information has been withheld.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that SAMUEL T. HOUSTON is in contempt of this Court for violation of the Temporary Injunction dated September 5, 2002 in each of the following particulars:

    a.  Houston failed and refused to return all original policy files and their complete contents to Millennium pursuant to the temporary injunction order.

    b.  During this hearing, Houston has returned only incomplete portions and pieces of the original files taken from Millennium and correspondence to and from the customers, customer information and insurance policy information has been withheld.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the following punishment is imposed on SAMUEL T. HOUSTON for these acts of contempt:

    a.  For failing to return all original policy files and their complete contents to Millennium, Houston is fined $500.00 and is to be con-

fined in the Harris County Jail for three days and thereafter until he has complied with the Temporary Injunction Order signed by Judge Martha Hill Jamison on September 5, 2002, as set out below.

b. For returning only incomplete portions and pieces of the original files taken from Millennium, and withholding correspondence to and from customers, customer information and insurance policy information, Houston is to be confined in the Harris County Jail until he has complied with the Temporary Injunction Order signed by Judge Martha Hill Jamison on September 5, 2002.

Despite the trial court's statement at the hearing that the list of missing documents would be attached to the judgment, there is no attachment listing the specific documents relator was found not to have produced. In addition, the judgment incorrectly refers to a Temporary Injunction Order signed on September 5, 2002, when the order in this case was not signed until September 9. While one may infer that the orders are the same, interpretation of a judgment "should not rest upon implication or conjecture." *Ex Parte Acker*, 949 S.W.2d 314, 317 (Tex.1997) (quoting *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex.1988)).

In accordance with the court's announcement at the conclusion of the contempt hearing on Friday, October 18, relator was jailed over the weekend, and then returned to the court for further proceedings on Monday, October 21. At the end of that day, the trial court issued an order finding that relator had served the period of confinement and produced the documents required by the temporary injunction order of September 9, 2002 and thus had purged himself of civil contempt. However, as relator had not paid the $500 fine, the trial court ordered that he "shall remain in custody until he has paid such fine levied as criminal contempt of court."

On October 21, 2002, this Court granted relator's request for emergency relief and petition for writ of habeas corpus, pending final determination of the cause. We further ordered the Clerk of this Court to issue a writ of habeas corpus, and ordered relator released from confinement on his own recognizance pending the hearing on December 4, 2002. On that date, relator's counsel informed the Court during oral arguments that relator had been served with a second amended order of contempt on December 3, 2002. Our record has now been supplemented with a sworn copy of that order. *See* Tex.R.App. P. 52.7(b). The order refers to the court's previous finding of contempt on October 18, 2002, and the $500 fine assessed as punishment, and requires relator to "pay such fine levied as criminal contempt of court on or before December 16, 2002."

■■■ Relator raises four issues in this proceeding attacking the judgment of contempt as void. First, he asserts relief must be granted because the September 9 injunction order does not require compliance in specific and unambiguous terms. In addition, he asserts the judgment of contempt and confinement order are vague, ambiguous, and lack sufficient notice of the requirements for compliance. We agree with these contentions.

■■■ An original habeas corpus proceeding is a collateral attack on a contempt judgment. *Ex parte Rohleder*, 424 S.W.2d 891, 892 (Tex.1967); *In re Markowitz*, 25 S.W.3d 1, 2 (Tex.App.-Houston [14th Dist.] 1998, orig. proceeding). A writ of habeas corpus will issue if the contempt order is void because it deprives the relator of liberty without due process of law, *see Ex parte Swate*, 922 S.W.2d 122, 124 (Tex.

1996), or because the order of contempt was beyond the power of the court to issue. *See Ex parte Barnett,* 600 S.W.2d 252, 254 (Tex.1980); *Ex parte Barlow,* 899 S.W.2d 791, 794 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding).

The alleged contempt in this case is constructive contempt because the production of documents (or lack thereof) occurred outside the court's presence. *Ex parte Chambers,* 898 S.W.2d 257, 259 (Tex. 1995).[2] The contempt judgment appears to be a hybrid one, containing both punitive and coercive elements, although there is no mention of "criminal contempt" in any judgment, only in the trial court's October 21 "Order." *See Ex parte Sanchez,* 703 S.W.2d 955, 957 (Tex.1986) (holding that a court can issue a "hybrid" order, combining elements of both punishment and coercion). The order of three days' incarceration (already completed) is one for criminal contempt; the order conditioning relator's release upon compliance with the injunction is coercive and constitutes a civil contempt.

At issue here is only the trial court's order that relator be confined until he pays the $500 fine. The Texas Constitution prohibits imprisonment for the failure to comply with an order to pay a "debt." Tex. Const. Art. 1, § 18. ("No person shall ever be imprisoned for debt."). An order to pay money may be enforced by other legal processes, such as execution or attachment of property, but not by imprisonment of the adjudicated debtor. *Ex parte Hall,* 854 S.W.2d 656, 658 (Tex.1993). An order of confinement for failure to pay a debt violates the constitution, is void, and may be attacked in a habeas corpus proceeding. *Ex parte Jack-*

*son,* 590 S.W.2d 775, 776 (Tex.Civ.App.-El Paso 1979, orig. proceeding). We note, however, that Texas courts have recognized that criminal fines are not debts, and incarceration for failure to pay those fines is not constitutionally prohibited. *See, e.g., Dixon v. State,* 2 Tex. 481 (1847); *Ex parte Carey,* 704 S.W.2d 13, 14 (Tex.1986) (per curiam); *Ex parte Wagner,* 905 S.W.2d 799, 802 (Tex.App.-Houston [14th Dist.] 1995, orig. proceeding). Because we hold, as is more fully discussed below, that the contempt judgment in this case is void, and any punishment imposed based upon the alleged contempt is also void, we need not determine whether a fine imposed as punishment for contempt arising out of a civil proceeding is a debt for which incarceration is prohibited.

After review of the record on file in this proceeding, we conclude the judgment of contempt cannot withstand the heightened burden required before criminal punishment may be imposed. Civil contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings. *Ex parte Johnson,* 654 S.W.2d 415, 420–21 (Tex.1983). Among these procedural due process rights is the right to reasonable notice of each alleged contumacious act. The due process requirement is one of "full and complete notification" of the charges alleged with a reasonable opportunity to meet the charges by defense or explanation. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex. 1979); *see also Ex parte Edgerly,* 441 S.W.2d 514, 516 (Tex.1969). In addition, a criminal contempt conviction for disobedience of a court order requires proof beyond a reasonable doubt. *Ex parte*

---

**2.** Criminal contempt is punishment for past disobedience to a court order that constitutes an affront to the dignity and authority of the court. *Ex parte Werblud,* 536 S.W.2d 542,

545–46 (Tex.1976). Civil contempt, by contrast, is remedial and coercive in nature; one may procure release by compliance with the provisions of the order of the court. *Id.*

*Chambers,* 898 S.W.2d at 259. The Texas Supreme Court has long held that contempt proceedings in Texas should conform as nearly as practicable to those in criminal cases. *Ex parte Johnson,* 654 S.W.2d at 419. These proceedings fail in several respects.

■■■■ First, the injunction order is not sufficiently specific to permit enforcement by contempt. To be enforceable by contempt, a decree must "set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him." *Ex parte Acker,* 949 S.W.2d at 317 (quoting *Ex parte Chambers,* 898 S.W.2d at 260). The order may not be susceptible to more than one interpretation. *Ex parte Glover,* 701 S.W.2d 639, 640 (Tex.1985). By requiring relator to copy *"all files,"* but then ordering him to provide *"the original policy files and their complete contents,"* the order required interpretation as to whether relator had to return more than original policy files. (emphasis supplied). Relator believed the injunction order required return of original policy files, but at the hearing on October 8, the trial court interpreted the order to mean that "all files" in relator's possession as of September 5 had to be returned.

■■■■ The same specificity requirement applies to the judgment of contempt as well. A contempt order is insufficient if its interpretation requires inferences or conclusions about which reasonable persons might differ. *Ex parte Durham,* 921 S.W.2d 482, 486 (Tex.App.-Corpus Christi 1996, orig. proceeding). Where civil contempt is imposed, the contempt order must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt. *Ex parte Proctor,* 398 S.W.2d 917, 918 (Tex.

1966); *Durham,* 921 S.W.2d at 482. Absent the attachment listing documents to be returned, the contempt judgment in this case does not inform relator what documents must be returned in order to purge himself of contempt.

■■■■ The motion for contempt and show cause is also lacking. "Due process of law demands that before a Court can punish for a contempt not committed in its presence, the accused must have full and complete notification of the subject matter, and the show cause order or other means of notification must state when, how, and by what means the defendant has been guilty of the alleged contempt." *Ex parte Edgerly,* 441 S.W.2d 514, 516 (Tex.1969). A constructive contemnor must be given complete notification and a reasonable opportunity to meet the charges by way of defense or explanation. *Ex parte Gordon,* 584 S.W.2d at 688. A contempt judgment rendered without proper notification is a nullity. *Id.* Among the due process rights accorded an alleged contemnor is the "right to reasonable notice of each alleged contumacious act." *Ex parte Brister,* 801 S.W.2d 833, 835 (Tex.1990) (Cook, J., concurring). Without that notice, the contempt judgment is void. *Ex parte Gordon,* 584 S.W.2d at 688. Here, not only did the show cause notice fail to advise relator of the specific acts of contempt, it also failed to provide notice that criminal confinement and a criminal penalty would be sought as punishment.

In sum, we find several deficiencies in the contempt proceedings in this case. First, the September 9 injunction order is vague in its description of what documents relator was required to produce. Furthermore, neither the show cause motion nor the contempt judgment describes the specific documents that relator is alleged to have failed to produce in violation of the injunction. Both the show cause notice

and the judgment state that relator returned "only incomplete portions and pieces of the files." The contempt judgment further states relator violated the injunction in "withholding correspondence to and from customers, customer information and insurance policy information." By failing to identify the customer files to which the order refers, this additional statement provides no greater specificity. Moreover, it is unclear from the language in the injunction that these additional documents were required to be produced. We conclude the record before this Court does not contain proof beyond a reasonable doubt that relator violated the September 9, 2002 injunction.

█ We hold that the judgment of contempt signed October 18, 2002, and all modifications and amendments thereto, are void. The trial court may not modify a contempt judgment weeks after the original judgment has been entered and relator has sought habeas relief. *See Ex parte Delcourt,* 888 S.W.2d 811, 812 (Tex.1994) (rejecting trial court's subsequent additional contempt judgments and commitments signed weeks later); *see also Ex parte Anderson,* 900 S.W.2d 333, 335 (Tex. 1995) (holding corrected contempt and commitment order signed more than four months after contempt hearing and almost two months after appellate court had granted habeas corpus not sufficiently close in time to contempt finding to satisfy due process requirements).

We grant habeas corpus relief and order relator, Sam Houston, discharged from the obligations contained in the trial court's judgment of contempt and order of confinement signed October 18, 2002, and he is further ordered discharged from any and all amended or modified contempt judgments based upon the contempt hearings conducted on October 8, 16, and 18, 2002.