Opinion issued August 29, 2006
















In The
Court of Appeals
For The
First District of Texas




NO. 01-06-00279-CV




IN RE CHARLES HADNOT, Relator




Original Proceeding on Petition for Writ of Habeas Corpus




MEMORANDUM OPINION
          Relator, Charles Hadnot, requests habeas corpus relief from a November 17,
2005 revocation and commitment order. Pending our final determination of the
matter, we ordered relator released from confinement, on bond, which relator has
posted. Respondent, Harris County Domestic Relations Office (HCDRO), has filed
a response brief to relator’s petition for habeas corpus relief. 
BACKGROUND
          On March 5, 2002, the trial court entered an “Agreed Final Decree of Divorce.”
It ordered relator to pay $760.20 per month for the support of his two children. The
$760.20 was payable in weekly installments of $175.43 on each Friday of the month,
beginning March 1, 2002. 
          On April 14, 2004, HCDRO, appointed by the trial court as friend of the court,
filed a motion for enforcement by contempt, alleging that relator failed to make the
$175.43 payments on various dates ranging from the year 2002 through April 9, 2004. 
As punishment for each of the alleged violations of the decree, HCDRO requested
that the trial court order relator confined for six months. In addition to the punitive
contempt sentences, HCDRO requested that the trial court hold relator in civil
contempt and order him confined beyond the punitive contempt confinement until he
purged himself of whatever contumacious conduct the trial court found.
          On August 5, 2004, relator, his former spouse, Felicia, and HCDRO entered
into an “Agreed Judgment of Contempt” (hereafter “August 5, 2004 order”).


 In it,
the trial court found relator’s child-support arrearage for the period from March 1,
2002 through August 5, 2004 to be $7,757.89, with accrued interest of $164.41, for
a total arrearage of $7,922.30. Also, the trial court held relator in contempt for not
making three of the prescribed $175.43 payments. The trial court stated the
consequences for these violations of the 2002 divorce decree as follows:
IT IS ORDERED that punishment for each separate count of contempt
is assessed at confinement in the County Jail of Harris County, Texas,
for a period of 180 days and day to day thereafter. IT IS THEREFORE
ORDERED that CHARLES HADNOT, RESPONDENT/OBLIGOR, is
committed to the County Jail of Harris County, Texas, to serve
concurrently a period of 180 days for each separate count of contempt
listed on Exhibit “A”, there to remain from day to day thereafter, to be
detained by the Sheriff of Harris County, Texas, until
RESPONDENT/OBLIGOR shall have paid the child-support arrearage
in full, together with MOVANT’S reasonable and necessary
enforcement attorney’s fees and costs of court, as hereinafter ordered.

The trial court suspended the commitment, conditioned on relator’s compliance with
certain terms and conditions, including making the $175.43 child support payments
as prescribed in the 2002 divorce decree and paying specified amounts on specified
dates toward satisfying the outstanding child-support arrearage. The trial court also
ordered relator to appear on December 9, 2004 to determine if he was complying with
the terms and conditions of the suspension of commitment as stated in the August 5,
2004 order.
          At a May 17, 2005 compliance hearing, the trial court entered an “Agreed
Order Revoking Suspension of Commitment and Resuspension of Commitment with
Family Community Supervision” (hereafter “May 17, 2005 order”). In it, the trial
court found that realtor was out of compliance with the August 5, 2004 order, in that
he had not paid the full amount of periodic child support and arrearage child support
on the dates specified as shown in Exhibit 1 attached to the May 17, 2005 order. 
Based on the amounts shown in Exhibit 1, the trial court found that, as of May 17,
2005, relator’s child-support arrearage, inclusive of interest, totaled $15,373.49. The
trial court revoked the August 5, 2004 suspension of commitment, and then
resuspended commitment, conditioned on relator’s compliance with conditions set out
in the May 17, 2005 order. These included payment of the periodic child support as
prescribed in the 2002 decree and paying $50 monthly against the child-support
arrearage. Additionally, the trial court placed relator on community supervision and
ordered that the terms and conditions of the suspension of commitment serve as the
terms and conditions of relator’s community supervision. The trial court set
November 10, 2005 as a hearing date to determine whether relator had complied with
the terms and conditions of the May 17, 2005 order.
          Following a November 17, 2005 compliance hearing, the trial court entered a
“REVOCATION AND COMMITMENT ORDER” (hereafter the “November 17,
2005 order”). The trial court revoked the suspension of commitment and ordered
relator confined for the three 180-day concurrent sentences. The trial court then
ordered that, relator continue to be confined from day to day, after the 180 days of
confinement, until he paid (1) $15, 373.49 to HCDRO “toward/as the child-support
arrearage,” (2) $747.38 to HCDRO “toward/as attorney’s fees and costs of court child
support . . .” and (3) $63 to HCDRO for the commitment and steno fees.
PRELIMINARY ISSUES
A. Compliance With Rule of Appellate Procedure 52.7(a)(2)
          HCDRO asserts that relator’s petition for habeas corpus relief should not be
considered in that the record is incomplete because relator did not file a copy of the
reporter’s record from the November 17, 2005 hearing. Texas Rule of Appellate
Procedure 52.7 provides: 
(a) Filing by Relator Required. Relator must file with the petition: . . . 
(2) a properly authenticated transcript of any relevant testimony from
any underlying proceeding, including the exhibits offered in evidence,
or a statement that no testimony was adduced in connection with the
matter complained.

Relator presumably did not deem any of the testimony or exhibits in the reporter’s
record of the November 17th hearing to be relevant to any of his issues in this habeas
proceeding. We also note that HCDRO has not asked to supplement the record with
any relevant portions of the trial court record below. We hold that the lack of a
reporter’s record of the November 17, 2005 hearing does not bar our consideration
of relator’s petition.
B. Ripeness of Challenge to Coercive Contempt Confinement Provision
          In his petition, relator asserts that, based on good-time credit, he has completed
his 180-day punitive sentence. In its response, HCDRO asserts that until relator
provides proof from the Sheriff of Harris County that he has received good-time
credit and has actually served the criminal contempt portion of his sentence, any
claim or argument concerning the coercive contempt is premature. In compliance
with Texas Rule of Appellate Procedure 52.3, relator’s counsel has sworn that, upon
his personal knowledge, the factual allegations in the petition are true and correct. 
The statement that, based on good-time credit, relator has completed the 180-day
punitive sentence is uncontradicted. We hold that relator has satisfactorily
established that he has completed his 180-day punitive sentence. See, e.g., Ex parte
Dustman, 538 S.W.2d 409, 410 (Tex. 1976) (holding that Dustman was financially
unable to pay child-support arrearage based, in part, on his uncontradicted sworn
statements that he was unable to pay, which were contained in his petition for writ of
habeas corpus).
 
 
STANDARD OF REVIEW
          The purpose of a habeas corpus proceeding is not to determine the ultimate
guilt or innocence of the relator, but to ascertain only whether the relator has been
unlawfully confined. Ex parte Gordon, 584 S.W.2d 686, 688 (Tex. 1979). In a habeas
corpus proceeding, the order or judgment challenged is presumed to be valid. Ex
parte Occhipenti, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990, orig.
proceeding). The appellate courts may order the contemnor released only if the
judgment is void because of a lack of jurisdiction or because the contemnor was
deprived of liberty without due process of law. In re Houston, 92 S.W.3d 870, 875,
875-76 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). The relator must
bring forward an adequate record to establish the invalidity of the order of which he
complains. See TEX. R. APP. P. 52.7(a).
CONFINEMENT FOR DEBT ISSUE
          In issue one, relator contends that the November 17, 2005 order is void because
it purports to punish him for not paying a debt. More specifically, in issue two,
relator complains that the trial court held him in contempt for not making three of the
$175.43 child support payments and also orders him confined “until he pays in excess
of $15,000,” and thus implying that the obligations are debts.
          No person shall be imprisoned for debt. Tex. Const. Art. I, § 18; In re Henry,
154 S.W.3d 594, 596 (Tex. 2005). The obligation that the law imposes on parents to
support their children, however, is not considered a “debt” within Article I, section
18. Ex parte Hall, 854 S.W.2d 656, 658 (Tex. 1993). Similarly, neither attorney’s
fees related to child support contempt actions, In re Henry, 154 S.W.3d at 596, nor
nor costs of court constitute debts. See Ex parte Helms, 259 S.W.2d 184, 188 (Tex.
1953) (“a defendant’s constitutional freedom from imprisonment for debt is not
violated in a contempt proceeding to enforce support payments by a judgment which
requires that he remain in jail until an attorney’s fee allowed the complainant and all
costs are paid.”). The rationale for authorizing contempt for failure to pay attorney’s
fees and court costs in a child support case is that they are considered incidental to
and a part of the child support obligation. Ex parte Binse, 932 S.W.2d 619, 621 (Tex.
App.—Houston [14th Dist.], 1996 orig. proceeding). Here, the $15,000 plus that 
relator is ordered to pay before he may be released from his coercive confinement
consists of child support, attorney’s fees, and costs, which, under the circumstances
of this case, are not considered debt and, therefore, not subject to Article I, section 18. 
We overrule issues one and two.
 
 
MOTION TO REVOKE COMMUNITY SUPERVISION ISSUE
          In issue three, relator contends that November 17, 2005 order is void because,
contrary to Texas Family Code, section 157.214,


 HCDRO did not file a verified
motion to revoke community supervision.
          The language of the November 17, 2005 order makes it clear that the
imposition of relator’s sentence was due to his failure to comply with the terms and
conditions of the suspension of commitment in the May 17, 2005 order, and not for
his failure to comply with the terms of community supervision. Section 157.214 is
inapplicable here. We overrule issue three.
MOTION TO ENFORCE RELATIVE TO MAY 17, 2005 ORDER
          In issue four, relator contends that the May 17, 2005 order is void because it
is not based on a motion to enforce.
          The contempt proceedings leading up to the May 17, 2005 hearing were
initiated by the motion for enforcement filed by the HCDRO on April 14, 2004. 
Consideration of this motion led to the August 5, 2004 agreed judgment of contempt,
in which relator agreed that on certain dates he had violated the child support
provision of the 2002 decree, that his punishment for such violations should be 180
days in jail, that he should be confined from day to day thereafter until he paid the
child-support arrearage in full, and that assessment of such confinement should be
suspended, provided he complied with specified terms and conditions, including
payment on a child-support arrearage of $7,922.30. In the August 5, 2004 agreed
judgment of contempt, relator was also advised of compliance hearings to be held in
2005 to determine whether he had complied with the specified terms and conditions
of suspension of commitment.
          The May 17, 2005 hearing was one such compliance hearing and, therefore, a
continuation of a pre-existing contempt proceeding, and not the commencement of
a new contempt proceeding, which would require a new motion for enforcement. The 
May 17, 2005 hearing resulted in another agreed order. In it, relator agreed that in
the August 5, 2004 order he was assessed punitive confinement of 180 days in jail
and coercive confinement from day to day after the punitive confinement, suspended 
conditioned on compliance with certain terms and conditions. He also agreed that his
child-support arrearage was $15,373.49 and that his suspension of commitment in the
August 5, 2004 order should be revoked, but then resuspended provided that he made
specified payments on his child-support arrearage. 
          As authority, relator relies on Ex parte Barlow, 899 S.W.2d 791 (Tex.
App—Houston [14th Dist.] 1995, orig. proceeding), presumably implying that he did
not receive adequate notice of the ways in which he violated the divorce decree. See 
id. at 794 (Barlow argued that he was denied due process because order holding him
in contempt was based on motion that failed to fairly apprise him of allegations
against him). As we have seen, in both the August 5, 2004 agreed judgment of
contempt and the May 17, 2005 agreed order revoking suspension of commitment and
resuspension of commitment, relator acknowledged the ways in which he had violated
the 2002 divorce decree. By agreeing to the May 17, 2005 order, relator waived any
complaints he had about lack of or inadequate notice of the ways in which he had
violated the 2002 divorce decree. See In re Butler, 45 S.W.3d 268, 273 (Tex.
App.—Houston [1st Dist.] 2001, orig. proceeding) (held that by agreeing to contempt
order, Butler waived any complaints he had about motion to enforce). We overrule
relator’s fourth issue.
Conclusion
          We deny relator’s petition for habeas corpus relief and remand him to the
custody of the Sheriff of Harris County for confinement pursuant to the November
 
 
17, 2005 revocation and commitment order.
 
                                                             Sam Nuchia
                                                             Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.