

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00415-CV

IN RE DONALD W. DAVIS                                                RELATOR

------------

ORIGINAL PROCEEDING

------------

# MEMORANDUM OPINION[1]

------------

## I. Introduction

In five issues, Relator Donald W. Davis seeks relief from Respondent the

Honorable Jonathan Bailey's judgment of contempt and commitment order. We

grant Relator's requested relief and order that he be discharged from custody.

## II. Factual and Procedural Background

Real Party in Interest Julia Davis (RPI) is Relator's mother. Relator's

father and RPI executed a power of attorney naming Relator—who has been a

---

[1]*See* Tex. R. App. P. 47.4.

certified public accountant since 1970 and has his own accounting firm—attorney in fact. After Relator's father died in December 2003, RPI executed a new power of attorney on June 21, 2005, naming both Relator and Charles N. Davis, III, Relator's brother, as attorneys in fact. Relator's sisters were named executors of Relator's father's estate, and at the September 23, 2011 contempt hearing, Relator testified that after his father's death, he gave his parents' financial records to his sisters so that they could do the work on the estate.

Relator's sisters transferred responsibility for RPI's affairs back to him "some months" later. On February 12, 2009, Relator admitted that he had "commingled with certain of [his] funds certain funds belonging to [RPI]." He estimated the amount of his mother's funds that he had commingled to be between $400,000 and $550,000 and indicated that he would complete an analysis of the amount on or before May 15, 2009.[2] RPI sued Relator in October 2009.

---

[2]In his March 12, 2010 deposition, Relator admitted that he never told RPI that he was borrowing money from her and that he needed to repay $564,621.22 to RPI. He also admitted that he should have done "a far better job of documenting things," but he stated that he had a complete record of everything and could show where the money went. Relator contended that the documents he produced to his mother's attorneys were all the documents that would be necessary to determine the money that had been paid for his mother's living expenses and the money that he owed his mother. However, he acknowledged that he had not produced documents that would show a transactional history; rather, "[t]here's a functional summary history of the amounts, including a number of transactions."

On September 3, 2010, RPI filed a motion for partial summary judgment to compel Relator to provide a complete accounting under probate code section 489B, to include

> at least, a description of the assets or funds of [RPI] that came into [Relator's] control, care, or possession; a description of what portion of those assets or funds were commingled with [Relator's] funds; and a description of the use and investments made of [RPI's] funds and those funds of [Relator] that were commingled with [RPI's] assets and funds, and sufficient information to locate and allow [RPI] [to] plead for a constructive trust over such assets and funds of [RPI] and such commingled funds whether those be assets or funds of [Relator, Relator's] business interests, or assets or funds in the possession of third parties.

To her motion, RPI attached, among other things, portions of Relator's March 12, 2010 deposition; the February 12, 2009 letter in which Relator admitted that he had commingled their funds; the affidavit of Emilia D'Mello, a CPA retained to review and attempt to produce a complete accounting from the documents provided by Relator;[3] an August 20, 2010 letter from RPI to Relator demanding an accounting; and the affidavit of Janese Dudash, a paralegal at the law firm representing RPI, in which Dudash stated that she served RPI's fourth request for production to opposing counsel's office on August 17, 2010, that the response was due August 27, 2010, and that, as of September 2, 2010, no

---

[3]In her affidavit, D'Mello stated that none of the documents produced by Relator, individually or in combination, met the requirements of section 489B. She stated that she had compiled a list of the additional documents necessary to complete an accounting meeting the requirements of section 489B, which were incorporated into "Plaintiff's Fourth Request for Production." Plaintiff's Fourth Request for Production was attached as an exhibit to her affidavit.

3

response had been received.  The request for production attached as an exhibit to D'Mello's affidavit requests very specific documents and time periods, including "the missing statements for [Relator's] account at Wells Fargo ending in account number x4051, e.g., statements prior to 5/2007 and 3/2008-7/2008" and statements from five other specific banks and account numbers, as well as "[a]ny other account in existence or opened for or by [Relator] between May 2005 and April 2009."  It also requests information on RPI's accounts from December 2003 "until present or when the account was closed," among other items.

On December 7, 2010, the Honorable Margaret Barnes granted RPI's motion for partial summary judgment and ordered Relator to

> provide [RPI] with an accounting meeting the requirements of Texas Probate Code § 489B and including the information necessary to plead for a constructive trust on the assets and accounts derived from the funds originating with [RPI] and commingled with the funds of [Relator] whether those be assets or funds of [Relator, Relator's] business interests, or assets or funds in the possession of third parties.

Relator's deadline to provide the accounting and all supporting documentation was December 20, 2010.

Relator did not meet the deadline, and RPI filed her first motion for contempt on December 21, 2010.  On March 7, 2011, Respondent held a hearing on the motion.  In his introductory remarks, RPI's counsel stated that Relator had managed RPI's financial affairs from 2003 until mid-2008.  He testified that his firm had not received an accounting from Relator or communications from Relator or his counsel with regard to any excuse for failure to comply with the

4

order to deliver the accounting and materials supporting the accounting. He admitted that the order did not list the requirements of probate code section 489B.

At the conclusion of the March 7, 2011 hearing, Respondent granted the motion, stating,

> Okay. [Relator,] I'm finding you in contempt. I believe the order rendered December 7, 2010, was sufficiently specific. I find by clear and convincing evidence that you failed to comply with the terms of that order.
>
> I find it particularly bothersome that you made no attempts to notify this court either prior to obtaining counsel or subsequent to obtaining counsel that you had any questions regarding what was expected of you. There was no indication that you did not understand what was required of you as a result of that order, no attempts to clarify that order, and apparently no attempts to comply with the order.
>
> I am ordering you be taken into custody of the Denton County Sheriff and confined until you comply with that order. I don't care how long it takes. You will make arrangements to have the order complied with or you will sit in jail until you do. I've entered a written order to those effects to be executed on March 7, 2011.

Respondent ordered that Relator would be confined in the county jail until he had complied with the following:

> 1. [P]rovide [RPI] with an accounting meeting the requirements of Texas Probate Code § 489B and including the information necessary to plead for a constructive trust on the assets and accounts derived from the funds originating with [RPI] and commingled with the funds of [Relator] whether those be assets or funds of [Relator, Relator's] business interests, or assets or funds in the possession of third parties;
>
> 2. [P]rovide said accounting, and all supporting documentation required to be provided therewith pursuant to Texas Probate Code

5

§ 489B, by delivering same to the offices of Wood, Thacker & Weatherly, P.C. at 400 W. Oak, Suite 310, Denton, Texas 76201. INSTANTER[.[4]]

On March 9, 2011, we denied Relator's petition for writ of habeas corpus and request for temporary relief. *In re Davis*, No. 02-11-00088-CV, 2011 WL 856904, at *1 (Tex. App.—Fort Worth Mar. 9, 2011, orig. proceeding) (mem. op.). The supreme court released Relator on bond while his petition for habeas corpus relief remained pending in that court and requested a response from RPI. *See In re Davis*, No. 11-0177 (Tex. Mar. 11, 2011, order), *available at* http://www.supreme.courts.state.tx.us/historical/2011/mar/031111.htm. The supreme court dismissed Relator's petition on October 21, 2011. *In re Davis*, No. 11-0177 (Tex. Oct. 21, 2011, order), *available at* http://www.supreme.courts.state.tx.us/historical/2011/oct/102111.htm.

In June 2011, while Relator's petition remained pending in the supreme court, RPI filed a new motion to compel Relator to provide an accounting under section 489B. Stating that Relator had claimed the original order requiring an accounting lacked sufficient specificity because the specific provisions of the code section had "not been spelled out for him," RPI requested an order directing Relator to provide the specific items set out in section 489B(d) within five days or, in the alternative, to comply with only those subparts of section 489B that he has never complained are vague,

---

[4]Respondent wrote in "INSTANTER" and initialed it.

6

which include the following subparts of § 489B(d) describing obligations with regard to the necessary contents of an accounting:

(1) the property belonging to the principal that has come to the attorney in fact's knowledge or possession; (2) a complete account of receipts, disbursements, and other actions of the attorney in fact, including their source and nature, with receipts of principal and income shown separately; (3) a listing of all property over which the attorney in fact has exercised control, with an adequate description of each asset and its current value if known to the attorney in fact; (4) the cash balance on hand and name and location of the depository where the balance is kept; and (5) all known liabilities.

Respondent granted the motion on June 16, 2011.

In his June 16, 2011 order, Respondent made clear that because Relator alleged that the December 7, 2010 order lacked sufficient clarity to be enforced,

to the extent necessary to the entry of this order and only to that extent, the court makes the following additional orders herein to aid in the enforcement of its judgments under Texas Rule of Civil Procedure 308 and pursuant to the Court's inherent power to enforce, clarify, modify, and alter its orders during the pendency of this suit as follows:

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that [Relator] provide [RPI] with an accounting meeting the requirements of Texas Probate Code § 489B which accounting shall include specifically the following:

(1) the property belonging to [RPI] that has come to [Relator's] knowledge or into his possession;

(2) a complete account of receipts, disbursements, and other actions of [Relator] including their source and nature, with receipts of principal and income shown separately;

(3) a listing of all property of [RPI], with an adequate description of each asset and its current value if known to [Relator];

(4) the cash balance on hand in any account and the name and location of the depository where said balances are kept; and

7

(5)     all liabilities of [RPI].

Respondent ordered Relator to deliver the accounting to RPI's attorneys on or before June 30, 2011.

On July 1, 2011, RPI filed her second motion for civil contempt, arguing that Relator failed to comply with Respondent's order, requesting that Relator be held in civil contempt, and requesting that if Respondent found any part of the order was not specific enough to be enforced by contempt, that Respondent enter a clarifying order specifying the duties imposed on Relator and a reasonable time within which compliance would be required.

Respondent held a hearing on RPI's second motion for civil contempt on September 23, 2011. RPI called D'Mello as her first witness. D'Mello testified that she had reviewed the information received from Relator—Plaintiff's Exhibit 1—in August 2011 and compared it to the information she had received and analysis she had performed earlier in the case. One of the documents Relator had previously provided was an inventory and appraisement of the assets Relator's father left to RPI when he died in December 2003; the assets had a total value of $837,538 as of December 2003. D'Mello stated that based on her analysis, approximately $520,000 of the funds were not accounted for when comparing the December 2003 inventory and appraisement to the records Relator had provided.

8

D'Mello described Plaintiff's Exhibit 1 as a handwritten general ledger that summarized the transactions in several accounts, with a detailed schedule for each account, "behind the account there will be a more detailed listing of each check[] and expenses. And then all of those individual accounts flow into a summary schedule by year and everything is then summarized on the first page." Nowhere on the document could she locate any statement that specifically identified what property of RPI had come into Relator's possession, and for several of the transactions, there was no information about the source or nature of the transaction, just a general description. There was also no listing of RPI's current assets.

D'Mello testified that Plaintiff's Exhibit 2 was a supplemental accounting provided by Relator, but she said that it did not include any new information from that which was provided in Plaintiff's Exhibit 1. She said that Plaintiff's Exhibit 3 was additional documentation provided by Relator on the week of the hearing and that, while the additional documentation provided some information for 2004, it related mainly to Relator's accounts, setting out total deposits, total withdrawals, and ending balances, but nothing else. D'Mello said that she could not document a source for approximately $2 million in deposits into Relator's accounts and that Relator's accounting was incomplete and inaccurate. D'Mello also said that the documentation Relator had provided did not include the accounts he had received in his 2008 divorce decree, and she opined that

producing an accounting that would comply with the June 16, 2011 order would be within the normal skill set of a CPA.

On cross-examination, D'Mello said that Relator stopped handling RPI's funds around April 2009 and admitted that there was probably not a way for Relator to tell anyone what RPI's funds consisted of today, although he could "do a list of the assets that he gave possession of." She also agreed that Relator should not be required to list RPI's assets and liabilities "as of today," but rather the ones that he surrendered in April 2009.

Relator testified that he provided an accounting to RPI's attorney and that Plaintiff's Exhibit 1 "sets forth all the transactions in the various bank accounts belonging to [RPI] over which [he] had knowledge or was involved for the periods of 2005, 2006, 2007, or 2008." Relator said that the funds and property that came back into his possession when his father's estate closed were reflected in the summary in Plaintiff's Exhibit 1 and that Plaintiff's Exhibit 2 was the same information in a different format. Relator testified that to his knowledge, the accounting he provided showed all of RPI's property that came into his possession.

With regard to the order's requirement that he give a complete account of receipts, disbursements, and other actions he took, including their source and nature, Relator said that he had included a description of the source of the different amounts he received. He said that he did not understand what "receipts of principal and income shown separately" meant and that he just interpreted that

10

requirement to mean a complete record of all the receipts.  Relator stated that he tried the best he could based on his records and the records that he had of RPI's accounts to try to identify where the money went.  He said that additional information from the banks would be useful but that as he no longer had power of attorney, he did not believe that he had authority to get his mother's bank records.

With regard to the order's requirement that he provide a list of all of RPI's property with an adequate description of each asset and its current value, Relator stated that he did not know what RPI's current assets were and that he turned his mother's assets over to his siblings at the end of 2008 or in early 2009.  Because he had not handled his mother's affairs since 2009, he could not list her current assets, debts, and liabilities.  Relator also stated that he did not believe there was a way to segregate and trace the commingled funds.

On cross-examination, Relator admitted that he had not asked his sisters to help him gather information so that he could figure out which property had come into his possession.  He also admitted that he had not asked Wells Fargo for any information.  When asked why he did not use accounting software to prepare his accounting, Relator said that he had never used accounting software for his personal information.  He said that it would only take him a few days to redo the accounting using a computer program.

Relator's sister, Patricia Davis Sherman, testified that Relator supplied the information for the inventory and appraisement of their father's estate.  Sherman

stated that Relator had records and maintained records regarding RPI's financial affairs from the date of the inventory until 2009.

At the conclusion of the hearing, Respondent ordered Relator to reappear the following week, on September 29, 2011. On September 29, 2011, Respondent found Relator in contempt because the manner in which he complied with the order was insufficient in failing to "comport with either the spirit or the letter of the prior order" and ordered him confined in the Denton County Jail until he had purged himself of contempt by complying with the order.

In the September 29, 2011 judgment of contempt and commitment order, Respondent found, among other things, that Relator failed to provide RPI with an accounting meeting the requirements of probate code section 489B and including the information specified in the June 16, 2011 order because his documentation failed to identify all of RPI's property that had come into his possession or knowledge and failed to specify the nature and source of a significant number of transactions described in the documentation. With regard to the "nature and source" requirement, Respondent stated, "Each transaction should include in the description of the transaction, the nature and source of the transaction, or a statement explaining in reasonable detail why the source and nature of the transaction cannot be described." Respondent stated that Relator's documentation failed to adequately describe how RPI's funds and assets that came into his possession and were commingled into his accounts either left his accounts "or where those funds are currently held." And he stated that Relator's

12

documentation failed to describe RPI's current assets known to Relator that should, at a minimum, include the date of origination and principal and interest due and owing on any loans or claims owing from Relator to RPI arising from the money and property of RPI disbursed to Relator.

In the contempt judgment, Respondent stated that Relator would be confined in county jail until he had complied with the following orders:

(A) provide [RPI] with an accounting meeting the requirements of Texas Probate Code § 489B which accounting shall include specifically the following:

(1) the property belonging to [RPI] that has come to [Relator's] knowledge or into his possession;

(2) a complete account of receipts, disbursements, and other actions of [Relator] including their source and nature, with receipts of principal and income shown separately;

(3) a listing of all property of [RPI], with an adequate description of each asset and its current value if known to [Relator];

(4) the cash balance on hand in any account and the name and location of the depository where said balances are kept; and

(5) all liabilities of [RPI].

(B) deliver the accounting that Relator has been ordered to provide herein above to the offices of Wood, Thacker & Weatherly, P.C. at 400 W. Oak, Suite 310, Denton, Texas 76201.

Relator filed a petition for writ of habeas corpus and motion for temporary relief in this court on October 7, 2011. We denied his motion for temporary relief on October 14, 2011. On October 17, 2011, Relator filed the reporter's record

from the September 23, 2011 hearing and a second motion for temporary relief, which we granted on October 18, 2011; we requested a response from RPI in our order granting temporary emergency relief.

### III. Discussion

In his fifth issue, Relator claims that certain provisions of the June 16, 2011 order are impossible to perform.[5]

"Texas law is clear that a petitioner may not be confined for civil contempt unless he or she has the ability but refuses to perform the conditions for release." *In re Gawerc*, 165 S.W.3d 314, 315 (Tex. 2005) (orig. proceeding). An order of contempt imposing a coercive restraint is void if the condition purging the contempt is "impossible of performance." *Ex parte Rojo*, 925 S.W.2d 654, 656 (Tex. 1996) (orig. proceeding) (quoting *Ex parte Dustman*, 538 S.W.2d 409, 410 (Tex. 1976) (orig. proceeding)). Relator bears the burden of proving his inability to comply. *Ex parte Chambers*, 898 S.W.2d 257, 261 (Tex. 1995) (orig. proceeding).

The record reflects that Relator gave his parents' financial records to his sisters after Relator's father died in December 2003 and that they transferred

---

[5]In his remaining issues, Relator complains that Respondent's September 29, 2011 order violates his constitutional right against Double Jeopardy; that he was denied due process because the June 16, 2011 order is ambiguous and fails to specifically set forth exactly what duties and obligations are imposed upon him, which also makes the September 29, 2011 contempt judgment and commitment order insufficiently specific as to notify him of what he has to do to purge himself of contempt; and that he complied with the June 16, 2011 order. Based on our disposition of Relator's fifth issue, we do not reach these issues. *See* Tex. R. App. P. 47.1.

14

them back to him "some months" later. In March 2011, RPI's counsel acknowledged that Relator had managed RPI's financial affairs from 2003 until mid-2008.

At the September 2011 hearing, D'Mello testified that Relator stopped handling RPI's funds around April 2009 and admitted that there was probably no way for Relator to tell anyone what RPI's funds currently consisted of today. She also agreed that Relator should not be required to list RPI's assets and liabilities "as of today."[6] Relator testified that he did not know what RPI's current assets were and that he turned his mother's assets over to his siblings at the end of 2008 or in early 2009; because he had not handled RPI's affairs since 2009, he said that he could not list her current assets, debts, and liabilities. Sherman, Relator's sister, testified that Relator had maintained records regarding RPI's financial affairs until 2009.

_____

[6]D'Mello's testimony as an expert witness regarding Relator's failure to comply with the order also tends to show that the order is unclear. For an underlying order to be enforceable by civil contempt, it must set forth the terms of compliance in clear, specific, and unambiguous terms so that the person charged with obeying the order will readily know exactly what duties and obligations are imposed upon him. *In re Tsertos*, 01-11-00170-CV, 2011 WL 941571, at *1 (Tex. App.—Houston [1st Dist.] Mar. 14, 2011, orig. proceeding) (mem. op.) (citing *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding)). The same specificity requirement applies to the judgment of contempt, and it is insufficient if its interpretation requires inferences or conclusions about which reasonable persons might differ. *Houston*, 92 S.W.3d at 877 (stating that when civil contempt is imposed, the contempt order must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt).

Based on the record presented by the parties, it appears impossible for Relator to present information on the state of RPI's assets returned to her by him after April 2009 at the latest because it is undisputed that he no longer had control over the assets relinquished by him to his siblings. Because the terms of the June 16, 2011 order did not include this limitation, we conclude that some of portions of the June 16, 2011 order are impossible to perform, and we therefore grant Relator's requested relief and order that he be discharged from custody. *See Chambers*, 898 S.W.2d at 262 (granting petition for writ of habeas corpus when relator conclusively established that he was unable to comply with the trial court's order).

BOB MCCOY
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MCCOY, JJ.

LIVINGSTON, C.J., filed a dissenting opinion.

WALKER, J., filed a concurring opinion.

DELIVERED:  February 21, 2012

16



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00415-CV

IN RE DONALD W. DAVIS                                           RELATOR

----------

## ORIGINAL PROCEEDING

----------

## DISSENTING MEMORANDUM OPINION[1]

----------

Civil contempt is coercive, and the contemnor may obtain his release by complying with the court's order. *In re Houston*, 92 S.W.3d 870, 876 n.2 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding); *see In re Moreno*, 328 S.W.3d 915, 918 (Tex. App.—Eastland 2010, orig. proceeding).

We order a relator released from the trial court's commitment order only when the order is void. *Ex parte Barnett*, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding); *In re Parr*, 199 S.W.3d 457, 460 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding). In order to hold the trial court's commitment order void,

---

[1]*See* Tex. R. App. P. 47.4.

we must conclude either that the trial court lacked jurisdiction to enforce the order or that the trial court "deprived the relator of his liberty without due process." *Barnett*, 600 S.W.2d at 254 (citing *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979) (orig. proceeding)).

Because Relator has repeatedly ignored and refused to follow the trial court's numerous attempts to determine the assets and transactions over which he had control while agent over his mother's assets, I believe the contempt order to be valid and would deny Relator's request for habeas relief.

While the majority points out that Relator may not be able to provide the exact current status of assets because what remained has been presumably transferred upon his removal, any reasonable reading of the order would necessarily be limited to the information Relator had while acting as his mother's agent under a power of attorney while the assets were subject to his control. Basically, the entire litigation in the trial court has been the Real Parties' attempts to find out what Relator did with the assets, all this against the backdrop of Relator's numerous admissions to his commingling in excess of $500,000 as set forth in the majority opinion. Majority Op. at 2. Any attempt beyond Relator's mere pencil markings and obfuscation could at least show an effort on his part to comply, especially in light of the fact that Relator is a certified public accountant. I believe the record is replete with Relator's admissions of misuse of the property and his failure to comply with the trial court's order. The September 29, 2011 order was sufficiently specific as to what Relator was required to produce and

2

necessarily limited to those transactions under his control. I would deny relief and therefore respectfully dissent from the majority's opinion.

TERRIE LIVINGSTON
CHIEF JUSTICE

DELIVERED: February 21, 2012



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00415-CV

IN RE DONALD W. DAVIS                                       RELATOR

----------

### ORIGINAL PROCEEDING

----------

## CONCURRING MEMORANDUM OPINION[1]

----------

To be enforceable by contempt, an order or decree must set out the terms of compliance so specifically and unambiguously that the party knows precisely the duties and obligations he must perform. *Ex Parte Hodges,* 625 S.W.2d 304, 306 (Tex. 1981) (orig. proceeding). The trial court's December 7, 2010 order clarifying the accounting that Relator Donald W. Davis was ordered to provide is not sufficiently specific to permit enforcement by contempt. *See, e.g.*, *Ex parte MacCallum*, 807 S.W.2d 729, 731 (Tex. 1991) (orig. proceeding) (holding decree not sufficiently specific to be enforceable by contempt because it was silent

---

[1]*See* Tex. R. App. P. 47.4.

regarding relator's obligation to surrender the children at any particular place"); *Ex parte Brister*, 801 S.W.2d 833, 834–35 (Tex. 1990) (orig. proceeding) (holding provisions of divorce decree not sufficiently specific to be enforceable by contempt); *Ex parte Reese*, 701 S.W.2d 840, 842 (Tex. 1986) (orig. proceeding) (holding judgment ordering relator "to complete" the streets, "to take back" the water system, to "begin to restore it to proper condition," and other similar provisions was not sufficiently specific to be enforceable by contempt because it failed to set forth exactly what actions relator was required to do to take); *Ex parte Glover,* 701 S.W.2d 639, 640 (Tex. 1985) (orig. proceeding) (holding judgment not sufficiently specific to be enforceable by contempt because it failed to "specify whether 'interest at the rate of 10% per annum' means simple interest or compound interest" so that relators "could [not] ascertain the duties the judgment required of them"); *Ex parte Slavin*, 412 S.W.2d 43, 44–45 (Tex. 1967) (orig. proceeding) (holding decree unenforceable by contempt because it failed to spell out the details of compliance in clear, specific, and unambiguous terms so that a person would readily know exactly what duties or obligations were imposed upon him); *In re Houston*, 92 S.W.3d 870, 877 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (holding injunction "requiring relator to copy '*all files,*' but then ordering him to provide '*the original policy files and their complete contents,*'" required interpretation as to whether relator had to return more than original policy files so that it was not sufficiently specific to be enforceable by contempt); *In re Marriage of Alford*, 40 S.W.3d 187, 188–90 (Tex.

2

App.—Texarkana 2001, no pet.) (holding decree awarding wife "[t]he total of 200,000 miles from [relator's] frequent flier miles with Lufthansa" was not sufficiently specific to be enforced by contempt).  Here, the order requires "an accounting meeting the requirements of Texas Probate Code § 489B which shall include" five categories of items.  The order in this case does not define what meets the requirements of Texas Probate Code section 489B or limit the required accounting to the five categories listed in the order.  Moreover, the five categories do not set out the terms of compliance so specifically and unambiguously that Relator knows precisely the duties and obligations he must perform.  Because the trial court's December 7, 2010 order clarifying the accounting that Relator was ordered to provide is not sufficiently specific to permit enforcement by contempt, I concur with the Majority Opinion's disposition of granting Relator's petition for writ of habeas corpus and ordering him discharged from custody.[2]  *See, e.g.*, *Ex parte MacCallum*, 807 S.W.2d at 731 (holding order more specific than this one unenforceable by contempt); *Ex parte Brister*, 801 S.W.2d at 834–35 (same); *Ex parte Reese*, 701 S.W.2d at 842 (same); *Ex parte Glover,* 701 S.W.2d at 640 (same); *Ex parte Slavin*, 412 S.W.2d at 44–45 (same).

SUE WALKER<br>
JUSTICE

DELIVERED:  February 21, 2012

---

[2]Based on its disposition, the Majority Opinion does not reach this issue.