**In re Mark D. LUEBE, Relator.**

No. 01–09–00908–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 2, 2010.

L.T. "Butch" Bradt, Elsie Martin–Simon, Houston, for Relator.

Brenda Luebe, pro se.

John B. Worley, Office of the Attorney General, for Real Party in Interest.

Panel consists of Chief Justice RADACK and Justices ALCALA and HIGLEY.

## OPINION

ELSA ALCALA, Justice.

Relator, Mark D. Luebe (Mark), requests habeas corpus relief from the August 10, 2009 "Order Enforcing Child Support Obligation and Commitment Order" ("enforcement order"). In four issues concerning his challenge to the punitive-contempt portion of the order, Mark contends he was not properly notified of the contempt charges, the contents of the enforcement order were inadequate to hold him in contempt, he was denied the right to a jury trial, and the prosecutor was improperly the beneficiary of the order sought to be enforced. Mark's remaining three issues assert the divorce decree was ambiguous, the motion for enforcement violated double jeopardy, and the coercive contempt was illegal due to his inability to pay.[1] We deny habeas corpus relief re-

---

1. The "issues presented" in Mark's petition lists the issues in a different order than they appear in the body of his petition. In this opinion, we number the issues in accordance

garding Mark's challenges to the punitive-contempt confinement portion of the enforcement order and dismiss as premature Mark's challenges to the coercive-contempt confinement portion of the enforcement order.

## Factual Background

In 1996, the trial court signed temporary orders requiring Mark to pay to real party in interest, Brenda G. Luebe (Brenda), $315 per month in child support. The trial court held in 1998 that Mark violated these orders by not paying $3,780 in child support, and committed him to jail for contempt. *In re Luebe,* 983 S.W.2d 889, 890 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding). Mark petitioned this Court for habeas corpus relief, which we granted in January 1999. *Id.* at 891.

The trial court signed a final decree of divorce in 2000, ordering Mark to pay child support of $250 per month on the first of each month, beginning on March 1, 2000, until the occurrence of certain events that are not relevant here. In the decree, the trial court also discharged the parties from the temporary orders, except for claims for enforcement of accrued unpaid child support and medical health insurance reimbursement under the temporary orders, which the trial court said would survive the decree.

In March 2009, the Office of the Attorney General (AG) filed against Mark a motion to enforce the 1996 temporary child support order and the child support order in the 2000 divorce decree, requesting the trial court hold Mark in contempt. The motion sought punitive contempt measures of a fine of not more than $500 and/or commitment to the county jail for not more than six months. The motion also requested the trial court to order Mark committed to jail with his release conditioned on payment of the child support arrearage, accrued interest, reasonable attorney fees, and court costs.

At the August 2009 enforcement hearing, the trial court found that Mark failed to pay court-ordered child support in the amount of $250 that was due on the first of each of the months of January, February, March, and April of 2009. It held that each of the four failures to pay constituted a separate act of contempt, and it ordered Mark committed to confinement for 180 days for each separate act of contempt with the periods of confinement to run concurrently. Additionally, as a civil-coercive measure, the trial court ordered Mark confined until he pays $5,000 in child support arrearage, $150 in attorney's fees, and court costs as billed.

Mark began his confinement on August 11, 2009. Subsequently, he petitioned this Court for habeas corpus relief. Mark has not included with his petition, a transcript or tape of the audio recording of the August 2009 enforcement hearing. On October 28, 2009, we ordered the Sheriff to release Mark, upon his posting a bond, pending our determination of his petition on the merits.

## Standard of Review

▬▬▬ The purpose of a habeas corpus proceeding is not to determine the ultimate guilt or innocence of the relator, but only to ascertain whether the relator has been unlawfully confined. *Ex parte Gordon,* 584 S.W.2d 686, 688 (Tex.1979). The presumption is that the order is valid. *In re Turner,* 177 S.W.3d 284, 288 (Tex. App.-Houston [1st Dist.] 2005, orig. proceeding) (citing *Ex parte Occhipenti,* 796 S.W.2d 805, 809 (Tex.App.-Houston [1st Dist.] 1990, orig. proceeding)). In a habeas cor-

with the way they appear in the body of

Mark's petition.

pus action challenging confinement for contempt, the relator bears the burden of showing that the contempt order is void. *In re Coppock*, 277 S.W.3d 417, 418–19 (Tex.2009) (orig. proceeding). An order is void if it is beyond the power of the court to enter it, or if it deprives the relator of liberty without due process of law. *Id.*

### Types of Confinement for Contempt

■ In the 2009 enforcement order, the trial court provides for two types of confinement, (1) punitive-contempt or criminal-contempt confinement and (2) coercive-contempt or civil-contempt confinement. The purpose of punitive-contempt confinement is to punish for disobedience for some completed act, which affronted the dignity of the court. *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex.1976). The sentence is not conditioned on some promise of future performance. *Id.* The purpose of civil or coercive-contempt confinement is remedial in nature. *Id.* A judgment of civil contempt exerts the judicial authority of the court to persuade the contemnor to obey some order of the court when such obedience will benefit an opposing litigant. *Id.* Incarceration is conditional upon obedience and, therefore, the civil contemnor "carries the key of his prison in his own pocket." *Id.*

■ As a general rule, when the trial court has provided for both punitive-contempt confinement and coercive-contempt confinement in the enforcement order, if the punitive-contempt provision is valid, attacks relative to the coercive-contempt confinement by a contemnor, who has not completed serving the punitive-contempt confinement, are premature. *See, e.g., Occhipenti*, 796 S.W.2d at 810. Here, the trial court sentenced Mark to four, 180–day, punitive-contempt periods of confinement to run concurrently. However, Mark has not completed serving the 180 days of punitive-contempt confinement due to his release on bond pursuant to our October 28, 2009 order. Because he has not yet completed his confinement for punitive contempt, we first address those issues that affect that portion of the enforcement order.

### Confinement for Punitive Contempt

Mark's four issues challenging the punitive-contempt portion of the order contend (A) he was not properly notified of the contempt charges, (B) the contents of the enforcement order are inadequate to hold him in contempt, (C) he was denied the right to a jury trial, and (D) the prosecutor was improperly the beneficiary of the order sought to be enforced.

### A. Adequacy of Motion for Enforcement

■ In his second issue, Mark asserts that the show cause order did not adequately give him notice of the contempt charges against him, so that it was unclear that he was facing a contempt proceeding and possible incarceration. Mark also contends it was unclear whether he was being summoned to a contempt hearing or a discovery proceeding because the show cause order requested that he bring with him his tax returns, payroll stubs, bank statements, and other specified documents.

A motion for enforcement may be filed to enforce a final order for child support. *See* TEX. FAM.CODE ANN. § 157.001 (Vernon 2008). The Texas Family Code specifies what must be in the contents of a motion to enforce. *Id.* at § 157.002. The Family Code states,

> A motion for enforcement must, in ordinary and concise language: (1) identify the provision of the order allegedly violated and sought to be enforced; (2) state the manner of the respondent's alleged noncompliance; (3) state the re-

lief requested by the movant; and (4) contain the signature of the movant or the movant's attorney.

■ *Id.* at § 157.002(a). In addition to these general requirements for motions for enforcement, a motion concerning enforcement of child support "(1) must include the amount owed as provided in the order, the amount paid, and the amount of arrearages; [and] (2) if contempt is requested, must include the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid, if any." *Id.* at § 157.002(b)(1),(2). "The notice of hearing need not repeat the allegations in the motion for enforcement." *Id.* at § 157.062(b). A contemnor has sufficient notice when the motion for contempt and the show cause order clearly show the relator that he is accused of failing to pay child support and the amount of the arrearage. *Ex parte Jimenez,* 737 S.W.2d 358, 360 (Tex.App.-San Antonio 1987, orig. proceeding).

Here, the motion for enforcement identified the provisions of the orders claimed to have been violated and that it was seeking to enforce them. *See* TEX. FAM.CODE ANN. § 157.002(a)(1) (Vernon 2008). The AG attached to its motion to enforce, Exhibit A, which is part of the 1996 temporary order that orders Mark to pay $315 per month on the first of each month, and Exhibit AAA, which is part of the divorce decree that orders Mark to pay $250 per month on the first of each month. By identifying the provision of the order violated, the motion meets section 157.002(a)(1) of the Family Code. *See id.*

The motion for enforcement also specified the manner of Mark's noncompliance. *Id.* at § 157.002(a)(2). In its motion to enforce, the AG attached and incorporated by reference Exhibit B, which is a "Financial Activity Report" from its Child Support Enforcement Division showing, among other things, dates and amounts of child support due from Mark, and dates and amounts of child support paid by Mark. The AG alleged that Mark violated the child support orders and committed a separate act of contempt on each of the occasions shown on Exhibit B. Exhibit B shows that for the period of time between October 1, 1998 and February 1, 2009, the only payments Mark made were $175 in May 1999 and $51.88 in September 2007. Exhibit B is a detailed statement explaining amounts that show Mark has a total arrearage of $51,554.86. This information showing the manner of Mark's noncompliance with the divorce decree meets the requirements in section 157.002(a)(2) of the Family Code, as well as section 157.002(b)(1), which requires that the motion for enforcement of child support include the amount owed, the amount paid, and the amount of arrearages. *See id.* at § 157.002(a)(2), 157.002(b)(1). This information also meets the requirements in section 157.002(b)(2) that requires that the motion include the portion of the order allegedly violated and, for each date of alleged contempt, the amount due and the amount paid. *See id.* at § 157.002(a)(2), 157.002(b)(1).

The motion for enforcement states the relief requested by the AG. *See id.* § 157.002(a)(3). The motion requests punitive contempt by a fine and/or six months confinement; coercive-contempt to commit Mark to jail until he pays the child support arrearage, accrued interest, attorney's fees, and court costs; and entry of a judgment for all support arrearage and accrued interest. *See id.* § 157.002(a)(3). More specifically, the motion to enforce states, "The Court should hold MARK DOUGLAS LUEBE in contempt and punish him by a fine of not more than $500 and/or commitment to the county jail for not more than six months." The AG's

signature on the motion complies with that Family Code requirement. *See id.* § 157.002(a)(4).

Mark's assertion that the show cause order did not adequately give him notice of the contempt charges against him is unpersuasive because the record shows the order setting the contempt hearing was served with the motion to enforce, which plainly notified him he was facing a contempt proceeding with possible incarceration. Furthermore, Mark's suggestion that the request that he bring financial documents to the hearing could have led him to believe he was facing only a discovery proceeding also lacks merit. The show cause order was served in conjunction with the pleading on the motion to enforce, which plainly notified him of the charges of contempt. The order setting the contempt hearing requires Mark's appearance "to respond to the pleading served with this order." We hold the AG's motion to enforce complies with the requirements in the Family Code for that type of motion, and properly notified Mark of the contempt charges. *See id.* § 157.001, 157.002. We overrule the second issue.

### B. Adequacy of Contents of Enforcement Order

 In his fourth issue, Mark asserts that the enforcement order concerning the punitive contempt is "fatally vague" because it "does not state which order [Mark] allegedly violated."

 An enforcement order must include "in ordinary and concise language the provisions of the order for which enforcement was requested." TEX. FAM.CODE ANN. § 157.166(a)(1) (Vernon 2008). If the order imposes incarceration for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested." *Id.* at § 157.166(b)(1). "The purpose of an enforcement order is to notify the contemner of how he has violated the provisions for which enforcement is sought and ... to provide sufficient information for an adequate review." *Turner,* 177 S.W.3d at 289 (citing *Ex parte Conoly,* 732 S.W.2d 695, 697 (Tex.App.-Dallas 1987, orig. proceeding)). A contempt order is insufficient if its interpretation requires inferences or conclusions about which reasonable persons might differ. *Id.*

Although it should have included the specific provisions sought to be enforced or incorporated by express reference, the enforcement order sufficiently notifies Mark of the charges found against him. *Turner,* 177 S.W.3d at 290. The four violations that the trial court found for punitive contempt were failure to pay court ordered child support of $250 on the first of the months of January through April of 2009. These violations necessarily implicated the divorce decree that ordered Mark to pay to Brenda child support of $250 per month, payable on the first of the month. These are the same violations that were expressly referenced in the motion for enforcement. Because of the amounts and dates alleged, these violations could not have arisen from other decree provisions, nor from the child support provisions of the 1996 temporary child support provision, which ordered child support of $315 per month. We also note that Mark has not alleged that he has had difficulty or confusion understanding which violations were found by the trial court. Furthermore, the order provides adequate information for habeas corpus review of Mark's grounds for relief.

The trial court's order apprises Mark of the violations found against him by implicating the specific violations alleged in the motion for enforcement. *See id.* We hold the enforcement order adequately identi-

fied Mark's violations. We overrule the fourth issue concerning the challenges to the punitive contempt.[2]

### C. Right to Jury Trial

 In his fifth issue, Mark asserts that he is entitled to habeas corpus relief because the trial court did not give him a jury trial. Cases of criminal contempt in which the sentence actually imposed does not exceed six months' confinement are exempt from the requirement of a jury trial. *Werblud,* 536 S.W.2d at 547 (citing *Taylor v. Hayes,* 418 U.S. 488, 495–96, 94 S.Ct. 2697, 2702, 41 L.Ed.2d 897 (1974)). Because the criminal-contempt sentence actually imposed did not exceed six months, Mark was not entitled to a trial by jury. *See id.* We overrule the fifth issue.

### D. Prosecutor was Not Beneficiary of Order

 Mark's sixth issue contends the AG could not act as the prosecutor in the case because it was the beneficiary of the order sought to be enforced. "[C]ounsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." *In re Davidson,* 908 F.2d 1249, 1251 (5th Cir.1990) (reversing finding of contempt regarding violation of temporary restraining order because trial court had either tacitly appointed private counsel for beneficiary of temporary retraining order as prosecutor against respondent or judge had acted as prosecutor); *see Young v. U.S. ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 809, 107 S.Ct. 2124, 2138, 95 L.Ed.2d 740 (1987) (holding that trial court erred in criminal contempt action by appointing prosecutor who had been counsel for an interested party in underlying civil litigation).

Unlike these cases, the AG is not a beneficiary of the order sought to be enforced. Title IV–D of the Social Security Act requires states to "provide services" relating to "the establishment, modification, or enforcement of child support obligations." 42 U.S.C.S. § 654(4) (Supp. 2009); *see Office of the Attorney General of Texas v. Lee,* 92 S.W.3d 526, 527 n. 1 (Tex.2002). The Family Code designates the Attorney General as Texas's Title IV–D agency and sets forth its rights and responsibilities to collect child support. TEX. FAM.CODE ANN. § 231.001 (Vernon 2008); § 231.002 (Vernon Supp.2009–10); *see Lee,* 92 S.W.3d at 527 n. 1. "An attorney employed to provide Title IV–D services represents the interest of the state and not the interest of any other party." *See* TEX. FAM.CODE ANN. § 231.109(d) (Vernon 2008). Because the Family Code expressly provides that the AG represents the interests of the state only, we hold the AG's prosecution of the contempt for failure to pay child support does not create a conflict of interest. *See Davidson,* 908 F.2d at 1251; *Marshall v. Jerrico, Inc.,* 446 U.S. 238, 250–52, 100 S.Ct. 1610, 1617–18, 64 L.Ed.2d 182 (1980) (recoupment of civil penalties by an enforcing agency did not create impermissible conflict of interest of agency's prosecutorial officials). We overrule the sixth issue.

Having overruled each of Mark's challenges to the punitive contempt order, we uphold that portion of the trial court's enforcement order.

### Coercive Contempt

 In his remaining three issues, Mark challenges the coercive-contempt portion of the trial court's order by asserting the divorce decree lacks clarity, the action is barred by double jeopardy, and

---

2. In the section concerning the coercive contempt, we address Mark's complaint that the

imposition of attorney's fees and court costs was ambiguous.

the confinement is illegal due to his inability to pay. Mark's first issue contends that the divorce decree is "fatally ambiguous" by discharging him from the temporary orders, but then ordering that the accrued unpaid child support and medical health insurance claims from the temporary orders survive the judgment. This challenge to the temporary orders does not concern the punitive contempt, which is based on violations for failure to pay the child support ordered in the 2000 divorce decree only. In his third issue, Mark contends that the coercive-contempt portion of the enforcement order provides that he is to be incarcerated until he purges himself of paying $5,000, implying that the amount may contain the $3,780 arrearage for which he was incarcerated in 1998. In his seventh issue, Mark asserts that the coercive contempt portion of the enforcement order is void because he has a present inability to make the $5,000 child support arrearage payment that the trial court set as a condition for his release from coercive confinement. These arguments, as well as Mark's assertion that the attorney's fees and costs are ambiguous in the coercive-contempt portion of the enforcement order, are premature because they are directed at the coercive-contempt section of the enforcement order only. Because Mark has not completed the 180–day punitive-contempt sentence assessed by the trial court, the complaints about the coercive-contempt portion of the order are premature. See Occhipenti, 796 S.W.2d at 810. We dismiss the first, third, and seventh issues, as well as the part of the fourth issue concerning the coercive contempt.

### Conclusion

Having determined that none of Mark's contentions attacking the punitive contempt confinement provisions of the August 10, 2009 enforcement order have merit, we remand Mark to the custody of the Sheriff to complete the remainder of his service of the 180–day punitive-contempt confinement in accordance with the trial court's August 10, 2009 "Order Enforcing Child Support Obligation and Commitment" and our Memorandum Order of Commitment issued contemporaneously with the issuance of this opinion. We dismiss as premature Mark's challenges to the civil-coercive-contempt confinement without prejudice to refile them upon his completion of the punitive-contempt sentence. See id. (holding when sentence for criminal contempt is valid, it would be premature to address civil portion of order).