**Opinion issued December 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00704-CV

———————————

## IN RE TAMMY FOUNTAIN, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## O P I N I O N

In this habeas corpus proceeding, relator Tammy Fountain challenges the legality of her confinement for violating an agreed order in a suit affecting the parent-child relationship.* Fountain stipulated that she violated the order, which resulted in findings of contempt and an order committing her to a 60-day jail

---

* The underlying case is *In the interest of S.F., a child*, No. 2010-31997 in the 309th District Court of Harris County, Texas, the Honorable Sheri Dean, presiding.

sentence. The commitment order was suspended, conditioned upon Fountain's continuing compliance with court orders. Acting on a motion to revoke the suspension of commitment, the trial court subsequently found that Fountain had committed further violations of the court's orders, and it ordered that she be taken into custody in accordance with the prior contempt order.

Finding no abuse of discretion in the trial court's revocation of its prior suspension of commitment, we deny the petition.

## Background

This is the second time Fountain has sought relief in this court from the proceedings in a suit affecting her parental relationship with her adopted son. *See In re Fountain*, No. 01-11-00198-CV, 2011 WL 1755550 (Tex. App.—Houston [1st Dist.] May 2, 2011, orig. proceeding) (opinion on rehearing). After we denied mandamus relief from the denial of a motion to dismiss the underlying suit, Fountain agreed to the entry of an order which appointed her as sole managing conservator and Kathy Katcher as a nonparent possessory conservator. Among other things, the October 18, 2011 agreed order provided that within 30 days each party was to "permit the other conservator to obtain health-care information regarding the child" and authorize the disclosure of "protected health information to the other conservator." This order also required each party to notify the "other party, the court, and the state case registry" of any change in the party's contact

2

information, including current residence, phone number, and employer contact information. Fountain and Katcher were also required to provide notification of any intended change in this residency and contact information "on or before the 60th day before the intended change." If a party did not know of the change in time to provide the 60-day notice, then notice was required "on or before the fifth day after the date that the party knows of the change."

Several months after the entry of the October 18 agreed order, Katcher moved to enforce that order for Fountain's failure to comply. The trial court held two hearings on May 3 and May 11, 2012. The parties stipulated, and the court found, that Fountain violated the October 18 order by failing to execute releases and thereby failing to permit Katcher to obtain health-care information regarding the child, as required by the agreed order. In an order dated May 24, 2012, Fountain was found to be in contempt and ordered to be committed to the Harris County Jail for a period of 60 days as punishment. In the same order, the 60-day jail sentence was suspended on the condition that she comply with the October 18 agreed order and with additional provisions contained in a new modification order which, like the contempt order, was also dated May 24, 2012.

The May 24 modification order required, among other provisions, that Fountain notify the child's schools in writing that Katcher could have lunch with the child at school, attend school activities, and "receive all school notices,

including all email notices normally sent to parents." Fountain was required to provide this notice to the child's current school by May 15, a date which was four days after the May 11 hearing but nine days before the May 24 order giving rise to this new obligation was actually entered. Additionally, the modification order obligated both parties to exchange a variety of information through an internet application called "Our Family Wizard." The parties were also required to promptly update this data, within 36 hours of any change to any of the initially exchanged data or to other specified scheduling matters, including but not limited to the inability to exercise a period of possession or knowledge that the child would not be attending a previously scheduled extracurricular activity.

Approximately one month later, Katcher moved to revoke the suspension of Fountain's commitment. Katcher alleged multiple violations of the prior orders, three of which are relevant in this proceeding. First, she alleged that Fountain had failed to give her sufficient notice of changes to the child's residence when Fountain notified her of a change of residence to Galveston County effective three days later. Second, she alleged that Fountain had not timely notified the child's school that Katcher could visit the child for lunch, pick him up from class, and attend school activities. Third, she argued that Fountain had violated the provision of the modification order requiring communication within 36 hours through Our Family Wizard about changes to the scheduled possessory period with the child.

4

After a hearing, the trial court revoked the suspension of Fountain's commitment in an order dated July 31, 2012. The court found that Fountain had violated the prior orders three times. First, she had failed to "provide the required notice" that she was moving on June 22 when she mailed notice of the move to Katcher on "June 18, 2012." Second, Fountain had failed to inform the school by May 15 that Katcher had permission to access the child there. Third, Fountain had failed to post information to Our Family Wizard as required. The district court ordered that Fountain be committed in accordance with "the orders attached hereto as Exhibits A, B, and C." A copy of the May 24 commitment order was attached as Exhibit A. On its second page, that order provided that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days." Fountain was taken into the custody of the jail on the same day.

Fountain filed an original petition for writ of habeas corpus seeking relief in this court, raising five issues. We ordered her released on bond pending our determination of her petition. *See* TEX. R. APP. P. 52.10.

## Analysis

A final order for possession of or access to a child may be enforced by means of a motion for enforcement as provided by chapter 157 of the Family Code. TEX. FAM. CODE § 157.001(a) (West 2008). Such an order may be enforced by

5

contempt, as also provided by chapter 157. *Id.* § 157.001(b). Chapter 157 specifies particular information that a motion for enforcement must provide "in ordinary and concise language," including identification of "the provision of the order allegedly violated and sought to be enforced," "the manner of the respondent's alleged noncompliance," and "the relief requested by the movant." *Id.* § 157.002(a). A motion to enforce the terms and conditions of access to a child must also include "the date, place, and, if applicable, the time of each occasion of the respondent's failure to comply with the order." *Id.* § 157.002(c). Chapter 157 sets forth detailed procedures for hearings on enforcement motions.[1]

One potential outcome of a hearing on an enforcement motion requesting contempt findings and sanctions is that the trial court "may place the respondent on community supervision and suspend commitment if the court finds that the respondent is in contempt of court for failure or refusal to obey an order rendered as provided in this title." *Id.* § 157.165. Community supervision under

---

[1] *See* TEX. FAM. CODE ANN. §§ 157.061–.168. For example, upon the filing of a motion for enforcement requesting contempt, the trial court shall set the date, time, and place of the hearing and order the respondent to personally appear and respond to the motion. *Id.* § 157.061(a). The respondent is entitled to receive personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing. *Id.* § 157.062(c). If a respondent who has been personally served with notice nevertheless fails to appear at a hearing, the court may not hold the respondent in contempt but may, on proper proof, grant a default judgment for the relief sought and issue a capias for the arrest of the respondent. *Id.* § 157.066.

chapter 157 is subject to different procedures from those applicable to enforcement motions. The procedures governing community supervision are detailed in a distinct subchapter. Under that subchapter, a "party affected by the order may file a verified motion alleging specifically that certain conduct of the respondent constitutes a violation of the terms and conditions of community supervision." *Id.* § 157.214. Unlike the procedures generally applicable to a motion to enforce, a prima facie showing of a violation of a condition of community supervision can result in the immediate arrest of the respondent, *id.* § 157.215, followed by a hearing on the motion to revoke community supervision within three days.[2] "After the hearing, the court may continue, modify, or revoke the community supervision." *Id.* § 157.216(c).

In her petition, Fountain alleges numerous deficiencies and errors in the motion and order that revoked the suspension of her commitment to jail. A commitment order is subject to collateral attack in a habeas corpus proceeding. *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005); *see* TEX. GOV'T CODE ANN.

---

[2]     *Compare id.* § 157.216(a) ("The court shall hold a hearing [on motion to revoke community supervision] without a jury not later than the third working day after the date the respondent is arrested under Section 157.215.") *with id.* § 157.062(c) ("Notice of hearing on a motion for enforcement of an existing order providing for . . . possession of or access to a child shall be given to the respondent by personal service of a copy of the motion and notice not later than the 10th day before the date of the hearing.").

§ 22.221(d) (West 2004) (granting the appellate courts the power to issue writs of habeas corpus). The purpose of the habeas corpus proceeding is not to determine the guilt or innocence of the relator, but only to determine whether she has been unlawfully restrained. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). We initially presume that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). But the writ will issue if the trial court's contempt order is beyond the court's power or the court did not afford the relator due process of law. *Id.* (citing *Henry*, 154 S.W.3d at 596).

The relator bears the burden of showing that she is entitled to relief. *Id.* In reviewing the record, we do not weigh the proof; rather, we determine only if the judgment is void because, for example, the relator has been confined without a proper hearing or with no evidence of contempt to support her confinement. *Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex. 1995); *see* TEX. GOV'T CODE ANN. § 22.221(d) (providing that courts of appeals exercise jurisdiction over habeas corpus petitions "[c]oncurrently with the supreme court").

## I. Punishment

In her first issue, Fountain argues that the July 31 revocation order was void because it did not clearly state the punishment imposed. She notes that the order, including its three attachments, is 37 pages long, but that the text of the order itself does not specify the length of the jail sentence or identify which attachment

8

contains the sentence. Fountain does acknowledge, however, that the May 24 contempt order was attached to the July 31 revocation order and specified a 60-day jail sentence.

Fountain relies upon Family Code section 157.166(a)(4) for the proposition that "an enforcement order must include 'the relief granted by the court.'" This provision is contained within subchapter D of chapter 157 relating generally to enforcement hearings and orders in suits affecting the parent-child relationship. *See* TEX. FAM. CODE § 157.001(a) ("A motion for enforcement as provided in this chapter may be filed to enforce a final order for conservatorship, child support, possession of or access to a child, or other provisions of a final order."). Section 157.166 does specify certain contents which must be included in an enforcement order, including "the relief granted by the court." *See id.* § 157.166(a)(4). But the provision is not part of subchapter E, which relates specifically to community supervision, including proceedings to revoke community supervision. *See id.* §§ 157.211–.217.

Although Fountain's legal challenges are directed at the July 31 revocation order, the actual enforcement order at issue in this proceeding is the May 24 contempt order. Fountain does not complain that this order failed to identify "the relief granted by the court"—indeed, she concedes that it did. Her complaint, instead, is that the relief was not expressly stated in the July 31 revocation order,

9

and that referencing the May 24 contempt order and attaching it to the July 31 revocation order was the equivalent of not including it at all. As characterized by Fountain, "[h]iding this requirement [of a statement of 'the relief granted by the court'] is the equivalent of not including it."

We disagree with the suggestion that the statement of the relief granted by the court was "hidden" in any relevant sense. Fountain relies on *In re Levingston*, 996 S.W.2d 936, 938 (Tex. App.—Houston [14th Dist.] 1999, no pet.), and *Ex parte Waldrep*, 783 S.W.2d 332, 333 (Tex. App.—Houston [14th Dist.] 1990, orig. proceeding), for the proposition that "the purpose of the commitment order is to notify the offender of how she has violated its provisions, to notify the sheriff so that he can carry out enforcement, and to provide sufficient information for an adequate review." We do not question this principle. *See, e.g.*, *In re Luebe*, No. 01-09-00908-CV, 2010 WL 1546961 (Tex. App.—Houston [1st Dist.] Apr. 2, 2010, no pet.); *Turner*, 177 S.W.3d at 289. However, Fountain provides no argument about how she lacked adequate notice of the sentence, what information is missing for law enforcement purposes, or how our review has been impaired. To the contrary, the record is clear that Fountain was sentenced to a 60-day jail sentence in the May 24 contempt order, that the sentence was suspended on the condition of her future compliance with the court's orders, and that on July 31 the

trial court found that such orders had been violated and accordingly revoked the suspension of the previously entered 60-day sentence.

The May 24 contempt order provided on its second page that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days." This clearly stated the punishment imposed, contrary to Fountain's assertion that it was hidden. "There is no particular form required of either the order of contempt or the commitment order, provided that their essential elements appear in a written document." *Ex parte Snow*, 677 S.W.2d 147, 149 (Tex. App.—Houston [1st Dist.] 1984, no writ). We overrule Fountain's first issue.

## II. Grounds for revocation of suspension

In her four remaining issues, Fountain argues that Katcher's motion for revocation and the trial court's July 31 revocation order fail to satisfy the procedural standards of Family Code chapter 157 in several respects. In her second issue, she argues that the judgment of contempt cannot be enforced based on violations of the May 24 modification order because the conditions of suspension in the May 24 contempt order mistakenly reference the "Modification Order of May 25, 2012." In her third issue, she argues that although Katcher's motion to revoke alleged that she violated the October 18 agreed order by mailing a notice on June 19, 2012, the trial court found that the violation was committed on

June 18, 2012, and therefore is "not supported by the pleadings." The fourth issue relates to the requirement in the May 24 contempt order that certain information be provided by May 15—before that order was actually entered. And the fifth issue complains of the specificity of the motion to revoke and the revocation order with respect to the allegation and finding that Fountain interfered with Katcher's participation in school lunches by failing to timely share information about the child's schedule on Our Family Wizard in violation of the court's orders.

One misconception underlies each of these issues in common. Fountain wrongly assumes that Katcher's motion to revoke and the trial court's revocation order must satisfy all of the procedural safeguards for an enforcement motion under subchapter D of chapter 157, as if a separate allegation, finding, and sentence for contempt of court were at issue. In other cases, these safeguards in fact have been applied under circumstances when a party has been found in contempt and sentenced, the commitment has been suspended subject to compliance with specified conditions, and then in further proceedings to revoke the suspension of commitment, a trial court made additional findings of contempt and imposed a different punishment. In such circumstances, with new allegations of contempt and enhanced sanctions, the motion to revoke does not merely invoke a previously rendered judgment of contempt, but the new motion instead functions as a separate enforcement motion for purposes of chapter 157. *See, e.g., In re*

12

*Broussard*, 112 S.W.3d 827, 831 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Ex parte Bagwell*, 754 S.W.2d 490, 493 (Tex. App.—Houston [14th Dist.] 1988, no writ); *Ex parte Durham*, 708 S.W.2d 536, 537 (Tex. App.—Dallas 1986, no writ).

In this case, however, although Katcher alleged and the trial court found that Fountain had violated the conditions of the suspension of her commitment, Katcher did not request and the trial court did not enter additional findings of contempt. Instead, as anticipated by chapter 157 and particularly subchapter E pertaining to community supervision, the trial court merely enforced the provisions of its own suspended commitment order, and it revoked the suspension, resulting in the imposition of the original sentence imposed for the original, admitted episodes of contempt.

Fountain provides no argument or authority for us to apply subchapter D of chapter 157 and its detailed procedures applicable to an original enforcement hearing to the separate circumstance of a proceeding merely to determine whether to revoke the suspension of a valid prior order of commitment for contempt, and we decline to do so. That approach would render ineffective the common practice of suspending contempt judgments contingent upon future compliance with court order. There is no reason to deprive trial courts of such flexibility in the enforcement of their orders. A heightened procedural standard is justified for

13

contempt proceedings in the first instance, especially when incarceration of the respondent is a potential result. But once there has been a judgment of contempt, there is no requirement that the same heightened measure of process be provided in order to adjudicate an allegation that the conditions of a suspended judgment have been violated. Instead, like the analogous circumstance of an appeal from the revocation of probation in a criminal proceeding, we review the trial court's ruling for an abuse of discretion. *See, e.g.*, *Bryant v. State*, No. PD-0049-12, 2012 WL 5232147 (Tex. Crim. App. Oct. 24, 2012); *see also In re Butler*, 45 S.W.3d 268, 272 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("Proceedings in contempt cases should conform as nearly as practicable to those in criminal cases."). In the case of an order revoking community supervision, proof of any one violation of the conditions of suspension is sufficient to support the revocation order. *See In re Bourg*, No. 01-07-00623-CV, 2007 WL 2446844 (Tex. App.—Houston [1st Dist.] Aug. 27, 2007, no pet.) (holding proof of any one violation of an order revoking suspension of commitment for contempt is sufficient to support revocation); *In re B.C.C.*, 187 S.W.3d 721, 724 (Tex. App.—Tyler 2006, no pet.).

Accordingly, we must deny relief if the revocation was justified on any basis, and in this case it was. After Fountain received notice of Katcher's motion to revoke and a hearing was held, the trial court found three violations of Fountain's conditions of suspension of commitment. One of the violations related

14

to Fountain's failure to comply with the trial court's order with respect to timely informing Katcher of a planned change of residential address. The October 18 agreed order provided, in relevant part:

*Required Notices*

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS . . . . THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

15

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. . . .

In the July 31 revocation order, the trial court specifically found that Fountain had violated this provision by failing to provide Katcher the "required notice" of her plan to move to Galveston County. This finding was supported by circumstantial evidence presented at the evidentiary hearing on the motion to revoke. On June 18, 2012, Fountain sent a letter to Katcher, informing her of a change of residential address. Fountain would have violated the agreed order's "Required Notices" provision if she knew of "an intended change" of residential address before June 13, or more than five days before she actually provided notice of the move to Katcher.

Fountain testified that she knew a move was possible as of June 14, but she did not know until June 16 that the move would actually occur. Other evidence at the hearing cast serious doubts on that testimony. The child spent the weekend of June 15–17 with Katcher. During that weekend, the child told Katcher that he had a "condo in Galveston" with his own bathroom, that it had a pool where he had been swimming, and that he been to his new school. Fountain admitted that the child had learned all of this information prior to June 15. Additionally, on June 16 Fountain leased her Houston home to an acquaintance. Nevertheless, Fountain insisted that she did not know about the intended move until June 16.

The burden of proof to justify the revocation of a suspension of commitment is a preponderance of the evidence, meaning that greater weight of the credible evidence which would create a reasonable belief that the respondent violated a condition of the suspension of commitment. *Cf. Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006) (describing burden of proof to revoke probation). We review the evidence in the light most favorable to the trial court's judgment. *See Canseco v. State*, 199 S.W.3d 437, 439 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). "The trial court is the exclusive judge of the credibility of the witnesses and must determine whether the allegations in the motion to revoke are sufficiently demonstrated." *Id.*

As the exclusive judge of the credibility of the witnesses, the trial court obviously did not believe Fountain's testimony that she did not know of an intended change of residential address prior to June 14. The circumstantial evidence relating to the move, including the child's knowledge of details about the new residence and the arrangement of a tenant to lease Fountain's Houston home, supported a reasonable belief that Fountain violated the agreed order's requirement that she notify Katcher on or before the fifth day after she knew of the intended change.

Fountain also contends that Katcher's motion to revoke failed to provide her sufficient notification of this alleged violation due to a variance in the date of her

written notice as specified in the motion (June 19) and the date identified in the revocation order (June 18). This defect does not invalidate the revocation order. "It is well settled that allegations in a revocation motion need not be made with the same particularity of an indictment although such allegations must be specific enough to give the accused notice of alleged violation of law contrary to conditions of probation." *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977) (quoted with approval in *In re Zandi*, 270 S.W.3d 76, 77 (Tex. 2008) (per curiam)). The motion to revoke adequately notified Fountain of the essential allegations against her, relating to the timing of her written notice of the move to Galveston. Her letter was dated June 16 but was actually mailed on June 18. The motion to revoke's reference to the notice being mailed on June 19 did not deprive Fountain of notice of the essential allegation about her violation of the requirement of written notice.

Accordingly, we overrule Fountain's third issue challenging the adequacy of the motion to revoke to provide her notice of the allegation that she violated the agreed order by providing untimely notice of an intended move. Because at least one of the grounds for revocation was supported by the evidence, we need not address Fountain's remaining issues challenging the other two violations found by the trial court.

18

## Conclusion

We conclude that Fountain has not shown that she was illegally restrained by the trial court's order revoking suspension of commitment and committing her to county jail. We therefore deny Fountain's request for habeas corpus relief.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.