**Opinion issued December 28, 2012**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00704-CV

———————————

## IN RE TAMMY FOUNTAIN, Relator

---

## Original Proceeding on Petition for Writ of Habeas Corpus

---

## DISSENTING OPINION

I respectfully dissent. I deeply disagree with the majority's characterization of the issues in this case, its legal conclusions, and its disposition of this habeas corpus proceeding.

The trial court found Tammy Fountain in contempt for violating a court order in a suit affecting the parent-child relationship, sentenced her to jail, and, in

the same order, suspended her commitment.[1]  The court subsequently revoked its earlier suspension order and committed Fountain to jail.  In five issues, she contends that the commitment order is void and violates her constitutional due process rights.  The majority first addresses the trial court's order committing Fountain to jail and reaches its conclusion that she be returned to jail.  It fails to identify or address any of the five issues raised by Fountain until page eight of its opinion, swiftly disposes of the first issue, and then lumps her other four issues together and disposes of those by holding that the statutory and constitutional procedural safeguards that apply to contempt proceedings do not apply to orders revoking the suspension of commitment.

I agree with Fountain that the commitment order is void under established Texas law and that, therefore, her commitment to jail violates her constitutional right to due process of law.  In its contempt order committing Fountain to jail, the trial court failed to specify the manner in which Fountain had committed two of the three violations for which it found her in contempt.  For the remaining violation, the trial court found Fountain in contempt for acts that occurred before the court signed the order giving rise to Fountain's obligation.  The commitment order is, therefore, void.  I would hold that the trial court abused its discretion in revoking

---

[1]  The underlying case is *In the interest of S.F., a child*, No. 2010-31997, in the 309th District Court of Harris County, Texas, the Honorable Sheri Y. Dean, presiding.

its order suspending Fountain's commitment. I would grant the petition for writ of habeas corpus, and I would order Fountain discharged.

## Background

On October 18, 2011, the trial court signed an order in which Tammy Fountain and Katherine Katcher agreed to their various rights and duties as conservators of a child. Among its numerous provisions, this order provided that, within thirty days after the signing of the order, each party was to "permit the other conservator to obtain health-care information regarding the child" and to authorize the disclosure of "protected health information to the other conservator" pursuant to federal health care law. The order also required each party to notify the "other party, the court, and the state case registry of any change in the party's current residence," phone number, employer contact information, and other similar information. The party was required to provide notification of any intended change in this residency and contact information "on or before the 60th day before the intended change." If the party did not know of the intended change in enough time to provide the sixty-day notice, then the party was required to give notice "on or before the fifth day after the date that the party knows of the change."

Several months later, on May 24, 2012, the trial court entered an order of contempt against Fountain because the court found that she had violated the earlier October 18, 2011 order by failing to execute the required releases to allow Katcher

3

to obtain the child's health-care information. Accordingly, the trial court ordered Fountain committed to Harris County Jail for sixty days. But in the same order, the court suspended Fountain's commitment so long as she complied "with each and every provision of the Agreed Order of October 18, 2011, and of the Modification Order of May 25, 2012." To accompany this order, the trial court prepared a modification order, which imposed new duties and obligations on Fountain. The hearing on these orders was held on May 11, 2012, but the orders were not signed and filed until May 24, 2012, thirteen days later.

The May 24, 2012 modification order, among other provisions, required that Fountain notify the child's school, in writing with notice to the court, that Katcher could have lunch with the child at school, pick the child up from school, attend school activities, and receive all school notices. Fountain was required to notify the child's current school by May 15, 2012, four days after the hearing on the new order, but nine days before the trial court signed the new order giving rise to this obligation. Additionally, the May 24, 2012 modification order obligated both parties to exchange contact information and schooling information and, within thirty-six hours of a change, to post any changes to periods for possession of the child through an Internet program called "Our Family Wizard."

A month later, Katcher moved to revoke the suspension of Fountain's commitment. She accused Fountain of four violations of the prior orders. First,

4

she alleged that Fountain had failed to provide the required notice of changes to the child's residence when Fountain had notified her only on June 19, 2012, that Fountain and the child would be moving to Galveston County three days later. Second, she alleged that Fountain had not notified the child's school by May 15, 2012, that Katcher could visit the child for lunch, pick him up from class, attend school activities, and receive school notices. Third, Katcher alleged that Fountain had violated the provision of the May 24, 2012 modification order requiring communication within thirty-six hours through the Our Family Wizard website about changes to the scheduled possessory period with the child. Fountain had allegedly told Katcher that the child would not be available for Katcher's scheduled lunch visit on June 6, 2012, because the child would be absent from school all week, but she then told Katcher on June 8, 2012, that the child had only been absent on the day scheduled for Katcher's visit. Fourth, Katcher accused Fountain of not paying a $77 court cost.

On July 31, 2012, after a hearing, the trial court revoked the suspension of Fountain's commitment ("the commitment order"). Using substantially the same wording as found in Katcher's motion to revoke, the court found that Fountain had violated its prior orders three times. First, she failed to "provide the required notice" that she was moving on June 22, 2012, when she mailed notice of the move to Katcher on June 18, 2012. Second, Fountain failed to inform the child's current

5

school by May 15, 2012, that Katcher had permission to access the child there. Third, Fountain failed to post information to Our Family Wizard as required when she had told Katcher that the child was unavailable for lunch with Katcher on June 6, 2012. The district court ordered that Fountain be committed in accordance with "the orders attached hereto as Exhibits A, B, and C." A copy of the original May 24, 2012 contempt order hand-labeled with an "A" followed the revocation order. On its second page, the attached contempt order provided that "punishment for the violation set out above is assessed at confinement in the Harris County Jail for a period of sixty (60) days."

Fountain filed an original petition for writ of habeas corpus seeking relief in this Court, raising five issues. We ordered her released on bond pending our determination of her request for relief.

## Contempt and Commitment Orders

"Criminal contempt is punishment for past disobedience to a court order that constitutes an affront to the dignity and authority of the court." *In re Houston*, 92 S.W.3d 870, 876 n.2 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). Civil contempt is remedial and coercive; release may be procured by compliance with the provisions of the court's order. *Id.* "Civil contempt proceedings are quasi-criminal in nature, and the contemnor is entitled to procedural due process throughout the proceedings." *Id.* at 876. Among the due process rights accorded is

6

the right to reasonable notice of each allegedly contumacious act. *Id.* Due process requires "full and complete notification" of the charges with a reasonable opportunity to meet them by defense or explanation. *Id.* In addition, criminal contempt requires proof beyond a reasonable doubt. *Id.*; *see Ex parte Chambers*, 898 S.W.2d 257, 259 (Tex. 1995). In order to support a judgment of contempt, the underlying decree must set forth the terms of compliance in "clear, specific and unambiguous terms" so that the person charged with obeying the order will know exactly what duties and obligations are imposed on her. *Chambers*, 898 S.W.2d at 260; *Houston*, 92 S.W.3d at 877. The order of contempt may not be susceptible to more than one interpretation. *Houston*, 92 S.W.3d at 877.

"Due process requires a court, before imprisoning a person for violating an earlier order, to sign a written judgment or order of contempt and a written commitment order." *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex. 1997) (per curiam) (citing *Ex parte Barnett*, 600 S.W.2d 252, 256 (Tex. 1980)). The contempt order must clearly state in what respect the court's earlier order has been violated. *Id.*; *see also Ex parte Edgerly*, 441 S.W.2d 514, 516 (Tex. 1969) (order or other means of notification "must state when, how, and by what means the defendant has been guilty of the alleged contempt"). Complementing this due process requirement, the Texas Family Code mandates that motions for enforcement and orders confining someone for violating a court's enforcement

7

order must state "the manner of the respondent's noncompliance."  TEX. FAM. CODE ANN. §§ 157.002(a)(2), 157.166(a)(3) (Vernon 2008).  Further, an order imposing incarceration for criminal contempt must contain findings identifying "the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt."[2] *Id.* § 157.166(b).

### Standard of Review of Commitment Order

A commitment order is subject to collateral attack in a habeas corpus proceeding.  *In re Henry*, 154 S.W.3d 594, 596 (Tex. 2005) (per curiam); *see* TEX.

---

[2]     Family Code section 157.166 provides:

> (a)     An enforcement order must include:
>
> (1)     in ordinary and concise language the provisions of the order for which enforcement was requested;
>
> (2)     the acts or omissions that are the subject of the order;
>
> (3)     the manner of the respondent's noncompliance; and
>
> (4)     the relief granted by the court.
>
> (b)     If the order imposes incarceration or a fine for criminal contempt, an enforcement order must contain findings identifying, setting out, or incorporating by reference the provisions of the order for which enforcement was requested and the date of each occasion when the respondent's failure to comply with the order was found to constitute criminal contempt.
>
> (c)     If the enforcement order imposes incarceration for civil contempt, the order must state the specific conditions on which the respondent may be released from confinement.

TEX. FAM. CODE ANN. § 157.166 (Vernon 2008).

8

GOV'T CODE ANN. § 22.221(d) (granting appellate courts power to issue writs of habeas corpus). The purpose of the habeas corpus proceeding is not to determine the guilt or innocence of the relator; rather, the purpose is only to determine whether she has been unlawfully restrained. *Ex parte Gordon*, 584 S.W.2d 686, 688 (Tex. 1979). We presume that the contempt order is valid. *In re Turner*, 177 S.W.3d 284, 288 (Tex. App.—Houston [1st Dist.] 2005, orig. proceeding). But we will issue the writ if the trial court's contempt order is void because it is beyond the court's power or the court did not afford the relator due process of law. *Id.* (citing *Henry*, 154 S.W.3d at 596).

The relator bears the burden of showing that she is entitled to relief. *Id.* In reviewing the record, we do not weigh the proof; rather, we determine only if the contempt order is void because, for example, the relator has been confined without a proper hearing or with no evidence of contempt to support her confinement. *Chambers*, 898 S.W.2d at 259–60.

### Validity of Commitment Order

Here, the trial court's order committed Fountain to jail as punishment for past violations of the court's May 24, 2012 contempt order. Therefore, the commitment order is an order of criminal contempt. *See Houston*, 92 S.W.3d at 876 n.2.

9

In her petition, Fountain points out numerous deficiencies and errors in the revocation motion and order that committed her to jail for contempt. She argues that two of the contempt violations are improper because the commitment order does not state the manner in which she failed to comply with the prior court orders, as required by due process and the Texas Family Code. *See* TEX. FAM. CODE ANN. § 157.166(a)(3); *Shaklee*, 939 S.W.2d at 145 ("The contempt order must clearly state in what respect the court's earlier order has been violated.") (citation omitted). Fountain argues that the remaining contempt violation is improper because the trial court found that she violated a provision in the court's order that required compliance before the court even signed the order imposing that particular obligation. *See Chambers*, 898 S.W.2d at 262 (contemnor cannot be held in contempt of court for actions that predate when court's order is reduced to writing).

Because I find these arguments dispositive in determining that the commitment order is void, I would not reach Fountain's other issues.

## I.      *Deficiencies in the Revocation Motion and Order*

While the commitment order states that Fountain failed to comply with several provisions of prior court orders, the order does not state the *manner* of her noncompliance. The order states:

> **Violation 1**. On June 18, 2012, respondent mailed to movant a notice that as of June 22, 2012, her residence and that of the child was

10

changed to an address in Galveston County. This does not provide the required notice.

This violation was accompanied by a copy of the text of the October 18, 2011 agreed order that required the parties to inform each other of changes to the child's current address within sixty days or within five days of learning of a change of address if the party did not know of the change in enough time to meet the sixty-day requirement. For the other violation, the order states:

> **Violation 4**. Respondent has interfered with movant's lunches with the child at school by violation of the order concerning posting information on Our Family Wizard. Movant had scheduled lunch with the child at school for June 6, 2012; respondent notified movant that the child would not be at school all that week. Respondent changed this schedule, and notified movant — at lunch time on June 8, 2012 — that in fact he **had been** at school all that week, except for the Wednesday movant had scheduled. Respondent failed to post this change timely, presumably to prevent movant's being able to reschedule and have lunch with the child a different day of the week.

This language is quoted verbatim from Katcher's motion to revoke. Preceding the violation, the court's May 24, 2012 modification order is quoted, which required that each party promptly post:

> b. knowledge that a child will not be attending a previously scheduled extracurricular activity — immediately, or as soon as practicable under the circumstances; but no less than eight hours; . . .

> f. any other changes — within thirty-six hours of the change.

These findings do not state the manner of Fountain's noncompliance. In the first violation, stating that Fountain had failed to report that she was moving with

11

the child to Galveston County, the findings do not mention how Fountain failed to notify Katcher. Did the court find that Fountain had known when she was moving earlier, and so it found that she had failed to notify Katcher within the five-day time limit imposed by the October 18, 2011 order? Or did the court find that Fountain had known she was planning to move much earlier, and thus she failed to notify Katcher sixty days before the move as the October 18, 2011 order required?

In the other violation, noting that Fountain had failed to update the Our Family Wizard program on the week Katcher attempted to visit the child at lunch, the findings again fail to state *how* Fountain had violated the May 24, 2012 modification order. Did she violate the modification order when she reported to Katcher that the child would be gone from school all week but then two days later reported he had been in school some days that week? The earlier order did not require her never to change the child's itinerary, only to report changes to the Family Wizard program. So, did Fountain fail to update the program at all? Or did she fail to update the program within the thirty-six hour time limit? For both violations, on what date did Fountain fail to comply with the previous orders? *See id.* (requiring order to identify date of each violation found to constitute contempt). The face of the commitment order does not answer these questions.

The commitment order is insufficient because these findings of violations of prior orders are unclear. *See Houston*, 92 S.W.3d at 877. The contempt order

12

must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt. *Id.* (citing *Ex parte Proctor*, 398 S.W.2d 917, 918 (Tex. 1966)). Generally, in the contempt context, the order or motion must be clear and unambiguous, which means the order or motion must be capable of only one reasonable interpretation. *Chambers*, 898 S.W.2d at 260. Although the revocation motion and the subsequent commitment order listed dates and described Fountain's actions, these documents are amenable to multiple reasonable interpretations as to how or even whether Fountain had violated the earlier orders. *See id.* ("A court order is insufficient to support a judgment of contempt only if its interpretation requires inferences or conclusions about which *reasonable* persons might differ.") (emphasis in original) (citing *Ex parte MacCallum*, 807 S.W.2d 729, 730 (Tex. 1991)). This is fatal to the commitment order because Fountain lacked the requisite notification of how to purge her contempt and how she might avoid violating court orders in the future. *See Shaklee*, 939 S.W.2d at 145 (invalidating contempt order for failing to specify when contemnor violated earlier orders); *Ex parte Blasingame*, 748 S.W.2d 444, 446–47 (Tex. 1988) (invalidating contempt order punishing couple for taking action that they reasonably interpreted as not violating prior orders).

The majority states that Fountain "wrongly assumes that Katcher's motion to revoke and the trial court's revocation order must satisfy all of the procedural

safeguards for an enforcement motion under [Family Code] chapter 157, as if a separate allegation, finding, and sentence for contempt of court were at issue." Slip Op. at 12. The majority then cites several cases for the proposition that a motion to revoke the suspension of commitment actually "functions as a separate enforcement motion," and is therefore subject to chapter 157's procedural requirements, including section 157.166's requirement that the contempt order specifically state the manner of the contemnor's noncompliance with a previous court order, when the trial court, in a revocation proceeding, makes additional contempt findings and imposes a different punishment. Slip Op. at 12–13. The majority concludes that these cases are distinguishable and that chapter 157's procedural requirements are inapplicable, because, here, when the trial court revoked the suspension of Fountain's commitment it "did not enter additional findings of contempt," but instead it imposed the "original sentence" for the "original, admitted episodes of contempt." Slip Op. at 13.

The majority justifies its holding by stating,

In other cases, these [procedural] safeguards in fact have been applied under circumstances when a party has been found in contempt and sentenced, the commitment has been suspended subject to compliance with specified conditions, and then in further proceedings to revoke the suspension of commitment a trial court made additional findings of contempt and imposed a different punishment. In such circumstances, with new allegations of contempt and enhanced sanctions, the motion to revoke does not merely invoke a previously rendered judgment of contempt, but the new motion instead functions as a separate enforcement motion for purposes of chapter 157.

14

Slip Op. at 12.  The majority reasons that because Katcher "did not request and the trial court did not enter additional findings of contempt," but "merely enforced the provisions of its own suspended commitment order," "subchapter D of chapter 157 and its detailed procedures applicable to an original enforcement hearing" do not apply.  Slip op. at 13. The majority cites no authority for its holding.  Rather, it refuses to follow established authority on allegedly distinguishable factual grounds.  I, therefore, take the majority to be making its own law without authority and in conflict with established law.

I disagree that the procedural safeguards applicable to enforcement motions and orders are not applicable here.  And I disagree that there are material factual distinctions between this case and the prior cases in which the law has been established.

The original May 24, 2012 contempt order found Fountain in contempt for violating the provision of the October 18, 2011 agreed order requiring her to execute all necessary releases to permit Katcher to obtain health-care information concerning the child.  The court ordered Fountain confined for sixty days in the Harris County Jail and ordered her to pay $5,000 to Katcher in attorney's fees, but the court then suspended the commitment pursuant to Fountain's compliance with the October 18, 2011 agreed order and the May 24, 2012 modification order.  In the commitment order, which revoked the suspension of Fountain's commitment,

15

the court ordered that Fountain be confined for sixty days in the Harris County Jail, that Fountain pay $5,000 to Katcher, as ordered in the May 24, 2012 contempt order, and that Fountain pay, "in addition to the attorney's fees and costs assessed in the order suspending commitment signed on May 24, 2012," an additional $4,379 in attorney's fees and costs to Katcher's attorney.

The court also found that Fountain violated the October 18, 2011 agreed order by not "provid[ing] the required notice" that she and the child were moving to Galveston County and the May 24, 2012 modification order by failing to notify the child's school of Katcher's access and by failing to timely update Our Family Wizard. The commitment order thus identified additional violations of ongoing obligations without specifying how Fountain failed to comply with these obligations and imposed a greater punishment than the original contempt order. *See Houston*, 92 S.W.3d at 877 (contempt order must spell out duties and obligations imposed and what contemnor can do to purge contempt). Thus, the commitment order was not clear and unambiguous, as required for a holding of contempt. *See Chambers*, 898 S.W.2d at 260.

I would conclude that the commitment order is functionally equivalent to an original enforcement order, and, therefore, Family Code chapter 157's procedural safeguards, including section 157.166(a)'s requirement that the enforcement order state the manner of the contemnor's noncompliance, apply equally to this

16

proceeding. *See Ex parte Durham*, 708 S.W.2d 536, 537–38 (Tex. App.—Dallas 1986, orig. proceeding) ("The purpose of this commitment order is to enforce the punishment provisions imposed by the original order holding relator in contempt. Consequently, we hold that this commitment order is an 'enforcement order' under [the predecessor to section 157.166]."); *see also Houston*, 92 S.W.3d at 876 (holding that civil contempt proceedings are quasi-criminal, entitling contemnor to procedural due process "throughout the proceedings"). I would hold that procedural statutory and constitutional due process safeguards were violated in this case. *See* TEX. FAM. CODE ANN. § 157.166(a)(3); *Shaklee*, 939 S.W.2d at 145; *Houston*, 92 S.W.3d at 875–77. Therefore, the commitment order is void. *See Houston*, 92 S.W.3d at 875–77.

## II. *Confinement for Violating Court's Command Before Court Issued Order Imposing Obligation*

Even if the trial court had clearly stated the manner of Fountain's noncompliance in the commitment order, the order would still be void for finding Fountain in contempt of court for violating the court's May 24, 2012 order on a date predating the date on which the court actually signed that order. *See Chambers*, 898 S.W.2d at 262 ("A contemnor cannot be held in constructive contempt of court for actions taken prior to the time that the court's order is reduced to writing."). It is the written order, signed by the court, that evinces a party's rights and duties, not oral admonitions at the hearing. *In re Sellers*, 982

17

S.W.2d 85, 87 (Tex. App.—Houston [1st Dist.] 1998, orig. proceeding) (citing *Ex parte Price*, 741 S.W.2d 366, 367 (Tex. 1987)).

The second violation in the contempt order was for Fountain's failure to inform the child's school about Katcher's rights of access to the child by May 15, 2012. The underlying order giving rise to this obligation, however, was signed on May 24, 2012, nine days after the date on which Fountain allegedly violated the order. Under Texas law, this invalidates the commitment order. *See Chambers*, 898 S.W.2d at 262; *Sellers*, 982 S.W.2d at 87; *see also Dunn v. Street*, 938 S.W.2d 33, 35 n.3 (Tex. 1997) (per curiam) (voiding contempt judgment because contemnor "did not violate a written order of the trial court").

The trial court assessed a punishment of sixty days' confinement and required the payment of attorney's fees for all of the contumacious acts it found. This means that even if only one of the violation findings was invalid, the entire order would be void.[3] *Ex parte Davila*, 718 S.W.2d 281, 282 (Tex. 1986) (per curiam) ("If one punishment is assessed for multiple acts of contempt, and one of those acts is not punishable by contempt, the entire judgment is void"); *Ex parte Sealy*, 870 S.W.2d 663, 667 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) (holding same). The commitment of a person to jail on a void order violates constitutional due process. *See Gordon*, 584 S.W.2d at 688 ("Where the

---

[3] Because none of the three acts in the commitment order will support a finding of contempt, I would not reach Fountain's other issues.

judgment ordering confinement is 'void,' the confinement is illegal and the relator is entitled to discharge."); *In re Alexander*, 243 S.W.3d 822, 827 (Tex. App.—San Antonio 2007, orig. proceeding) ("A writ of habeas corpus will issue when the relator has not been afforded due process, or when the order requiring confinement is void.").

## Conclusion

I would hold that the trial court abused its discretion in revoking its order suspending Fountain's commitment to jail and that the commitment order is void. Accordingly, I would grant the petition for writ of habeas corpus, and I would order Fountain released from her bond and discharged.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.